**NIKON INC., Appellee,**

v.

**IKON CORP., Appellant.**

**Nos. 1099, 92–9356.**

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1993.

Decided Feb. 25, 1993.

Jay H. Begler, New York City (Mark I. Peroff, Andrew V. Galway, Nancy J. Deckinger, and Liddy Sullivan Galway Begler & Peroff, P.C., on the brief), for appellee.

Glenn F. Ostrager, New York City (Dennis M. Flaherty, Dara L. Onofrio, Leon S. Segen, and Ostrager & Chong, on the brief), for appellant.

Before: TIMBERS, WALKER and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

This is an appeal from an order entered in the Southern District of New York, Nina Gershon, *Chief Magistrate Judge*, permanently enjoining Ikon Photographic Corp. (IPC) from using its Ikon trademark and recalling all of the company's outstanding products. IPC was found liable for trademark infringement against Nikon Inc. (Nikon) under §§ 32 and 43(a) of the Lanham Act and for trademark dilution under § 368-d of the New York General Business Law. On appeal, IPC contends that the magistrate judge improperly deprived it of a jury trial, erred in finding that there was a likelihood of confusion between the marks at issue, misapplied the New York anti-dilution statute, and inappropriately recalled Ikon products.

We reject IPC's claims on appeal. We affirm the district court order in all respects.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In 1986, Jack Elo founded IPC to market inexpensive 35 mm and 110 mm pocket cameras. He claims that he selected the trademark "Ikon" because of the familiarity of the word and the religious connotations associated with it, despite the rare spelling he chose.

Elo was aware of the existence of the trademark name "Zeiss Ikon" (Zeiss), used by a sophisticated photography equipment company, but he claims that he believed the mark was no longer in use. Elo also was aware of the existence of Nikon camera products, but claims he did not foresee a potential for confusion between the two names because he never intended to compete with such a dominant force in the industry. In 1987, IPC began marketing inexpensive "point and shoot" cameras affixed with the Ikon mark and logo.

In 1987, IPC filed an application with the United States Patent and Trademark Office to register the mark and its logo. The application was rejected because of its similarity with the "Zeiss Ikon" mark. In 1989, IPC entered into an agreement with Zeiss in which Zeiss consented to IPC's use of the mark for 110 mm and basic lens shutter cameras, but restricted IPC from using the mark on more complicated single lens reflex (SLR) cameras. The mark was available for registration and published for opposition on May 1, 1990. Nikon commenced the instant action in September 1989, and opposed the registration. The opposition proceeding was stayed pending disposition of the instant action.

In 1990, IPC filed another application to register a mark with a stylized "I" logo. Nikon originally did not oppose the mark. After the mark was registered, Nikon petitioned for its cancellation. That proceeding also was stayed pending the disposition of the instant case.

IPC markets inexpensive cameras which are widely sold through national chain stores and catalogues. Nikon has a reputation for selling more expensive and more complicated SLR cameras, generally through authorized dealers. Since 1983, Nikon has been marketing cheaper and less complicated point and shoot cameras targeted for amateur photographers, and sold in retail stores and through catalogue services. Just before trial, Nikon further bridged the gap between its products and IPC's by introducing an even less expensive 35mm compact camera which would be directly competitive with IPC's cameras. The new Nikon camera is marketed as the "Smiletaker," and is packaged in a yellow graphic box with a smile face logo.

Since 1988, IPC had been marketing a line of point and shoot 110 mm cameras known as its "Smile" line. IPC claims that prior to learning of the Smiletaker camera, it had planned to market a 35 mm "Smile" camera, which it introduced in the fall of 1992. The IPC cameras also are packaged in cardboard boxes, with the word "SMILE" in large letters, but no smile face. The name Ikon appears at the bottom of the box. IPC filed a counterclaim, alleging that Nikon's deliberate adoption of the secondary name "Smiletaker" fosters confusion between Nikon's camera and IPC's. IPC further alleged that Nikon is such a dominant force in the camera market that the confusion would have a severely adverse affect on the Ikon product. IPC sought a preliminary injunction to enjoin Nikon from using the Smiletaker mark. This motion was denied. IPC also made a jury demand for its counterclaim. Nikon moved to strike this demand. The magistrate judge denied Nikon's motion, but severed IPC's counterclaim and scheduled a bench trial on Nikon's claim to be held prior to the jury trial on IPC's counterclaim.

She held that the IPC mark infringed the Nikon mark. On December 18, 1992, the magistrate judge entered a permanent injunction, effective immediately, enjoining IPC from using the Ikon mark and providing for the recall of all IPC products from the marketplace. The judgment was stayed pending consideration of a motion for an extension of the stay by this Court. On December 29, 1992, a panel of this Court denied the motion but ordered this expedited appeal.

On appeal, IPC contends that (1) the district court erred in finding that there was a

**94**

likelihood of confusion between the two marks, and therefore there was no infringement; (2) the New York anti-dilution law is inapplicable because the parties to the instant case are competitors and the law should apply only to noncompetitors; (3) the district court erred in severing IPC's counterclaim against Nikon's use of the "Smiletaker" name, precluding it from its right to a jury trial; and (4) the recall of IPC products was inappropriate.

## II.

On this appeal from a permanent injunction, our function is limited to a review for abuse of discretion. Abuse of discretion can be found if the district court relied upon a clearly erroneous finding of fact or incorrectly applied the law. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1038 (2 Cir.1992). We must determine therefore whether the court applied the correct standard of law and, if so, whether its determination of the facts was clearly erroneous.

**(A) INFRINGEMENT UNDER §§ 32 AND 43(A) OF THE LANHAM ACT**

■ Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 & 1125 (1988) prohibit trademark infringement and false designation of origin, respectively. The key issue in these types of trademark cases is whether an appreciable number of consumers are likely to be misled or confused about the source of the product in question. *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 579–80 (2 Cir.1991).

■ It is well settled that in cases involving a claim under the Lanham Act the trier of fact must consider and balance the factors set forth in *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2 Cir.), *cert. denied,* 368 U.S. 820 (1961) to determine the "likelihood of confusion." The *Polaroid* test examines eight factors, including the strength of the senior user's mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the senior user will bridge the gap between the products, the sophistication of buyers, quality of defen-

dant's product, actual confusion, and the defendant's bad faith in adopting the mark. *Polaroid, supra,* 287 F.2d at 495. This list, however, is not exhaustive, nor is any one factor determinative. Each factor must be balanced with the others to determine the likelihood of confusion. *Lang, supra,* 949 F.2d at 580.

■ The court applied the *Polaroid* test in the instant case, thus correctly applying the applicable law for this claim. In reviewing a district court's determination of the *Polaroid* factors, the findings of fact are subject to reversal only if they are clearly erroneous, while the ultimate balancing of the factors is reviewed de novo by our Court. *Bristol–Myers, supra,* 973 F.2d at 1043. We now turn to the factual findings as to each factor.

### (1) *Strength of the Nikon Mark.*

■ There is no dispute over the strength of the Nikon mark. As such, it deserves broad protection against infringement. *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 258 (2 Cir.1987).

### (2) *Similarity Between the Marks.*

■ When evaluating the similarity of marks, it is necessary to show that the products are not only similar, but that they also are likely to provoke confusion. *Bristol–Myers, supra,* 973 F.2d at 1046; *Western Publishing Co. v. Rose Art Indus.,* 910 F.2d 57, 61 (2 Cir.1990). The court found that, although one of IPC's marks uses a stylized "I" and is not visually very similar to the Nikon mark, the stylized "I" is not used on all of IPC's cameras or packaging. Many advertisements and displays for IPC omit the stylized "I" and the shutter wheel design used on the "o". In several contexts, therefore, the marks are similar.

Further, the court found that the sounds of both marks are extremely similar, differing only by one letter. That letter is easily obscured in statements such as "This is an Ikon," and "This is a Nikon." The court also found that there was similarity in the appearance of the cameras, and the cameras often are displayed outside of their

packaging. This latter fact, combined with logos used in advertising, demonstrates that the court did look at the products in their commercial context, despite IPC's assertion that the court looked at the products "divorced from the commercial world." There is sufficient evidence to show that the court's finding was not clearly erroneous.

### (3) *Proximity of the Products.*

This factor focuses on whether the products compete. If the products serve the same purposes, fall within the same class, or are used for similar purposes, the likelihood of confusion is greater. *Lang, supra,* 949 F.2d at 582. While the parties have cameras at opposite ends of the spectrum, there is a substantial overlap of Nikon's low-end cameras with IPC's high-end cameras. These lines produce a substantial percentage of the respective companies' sales. IPC asserts that these products constitute only a small percentage of the products the companies have on the market, but the high percentage of sales does create proximity in the products. Further, the court found that both Nikon and IPC market these products through similar channels of trade and to similar types of customers. These facts all give weight to the court's finding of proximity of the products. That finding is not clearly erroneous.

### (4) *Bridging the Gap.*

While this factor turns on the likelihood of whether the senior user will enter the market of the junior user, the court was correct in finding that, if there already is an overlap in the market, the likelihood of confusion is greater. *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 78 (2 Cir. 1988). Although IPC asserts that Nikon first bridged the gap on the eve of trial with its Smiletaker model, as stated above, the gap actually was bridged in 1983 with Nikon's introduction of its point and shoot line which is marketed for the same consumers as IPC's upper-end line of its cameras. There already is a market overlap, increasing the likelihood of confusion.

### (5) *Sophistication of Consumers.*

"[T]he more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in trade dress or trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol–Myers, supra,* 973 F.2d at 1046. The district court found that, although the purchasers of Nikon's upper-end line of cameras generally are sophisticated in this area, the purchasers of the lower-end line often are amateur photographers, not unlike the purchasers of IPC cameras. While purchasers of these cameras are not impulsive, less sophisticated consumers could be confused about an affiliation between the products. This finding is not clearly erroneous.

### (6) *Quality of Junior User's Product.*

We have taken two approaches about the quality of the junior user's product: (1) an inferior quality product injures the senior user's reputation because people may think they come from the same source; or (2) a product of equal quality promotes confusion that they come from the same source. *Hasbro, supra,* 858 F.2d at 78. The court here applied both approaches and effectively mooted this factor. For our purposes therefore, it may be helpful to accept IPC's assertion that, unless the junior's product is inferior, the quality factor does not weigh in favor of the senior user. The court found that, while IPC's quality is good for its price, IPC does not have the same quality controls as Nikon does over its products. The court did not err in weighing this factor in favor of Nikon.

### (7) *Actual Confusion.*

"Although [evidence of actual confusion] is not necessary to show likelihood of confusion, its lack may under some circumstances be used against a plaintiff." *Hasbro, supra,* 858 F.2d at 78. In the instant case, the court found very limited evidence to support a claim of actual confusion. Only a couple of inconsequential isolated incidents of misdelivered mail were cited. Further, Nikon did not undertake a trademark survey to show actual confusion.

Thus, the court tipped this factor toward IPC. However, the court found that two incidents of "passing off"—representing IPC as a division of Nikon at retail stores— mitigated somewhat the lack of other evidence of actual confusion. This finding was not clearly erroneous.

### (8) *Bad Faith.*

IPC claims the name Ikon was chosen after Elo saw this spelling of the word in an encyclopedia and thought it would be familiar because of the pictorial religious connotations associated with it. Elo claims that the only problem he thought of was the name "Zeiss Ikon," (although he did not mention this fact at his deposition). Elo's twenty years of experience in the camera business (selling before he began IPC) makes it unlikely that he did not realize there was a significant resemblance between this name and Nikon. There also is evidence that he rejected the advice of his counsel to adopt a mark with a word other than Ikon as the dominant part. Elo did not disclose to his counsel his intent to market 35 mm cameras similar to Nikon's. There was sufficient evidence for the court's finding that IPC acted in bad faith.

### (9) *Balancing the Factors.*

Although we adhere to a clearly erroneous standard in reviewing the court's determination of the *Polaroid* factors (since they are deemed factual findings), we apply de novo review when balancing the factors. *Bristol–Myers, supra,* 973 F.2d at 1043. Applying the facts found by the court, each factor, with the exception of actual confusion, weighs heavily in favor of Nikon. And there was some evidence of actual confusion. The *Polaroid* factors are an analytical *tool*—not a rigid formula. *Id.* at 1044. No one factor is determinative. We hold that the situation taken as a whole clearly tips in favor of Nikon and supports the finding of a likelihood of confusion and trademark infringement.

### (B) THE NEW YORK ANTI-DILUTION CLAIM

■ IPC also was enjoined under the New York General Business Law § 368–d (McKinney 1984). At issue is whether this statute was applied properly in this case. There is a split among the district courts in this Circuit as to whether competitors are covered under the statute. *Bristol–Myers, supra,* 973 F.2d at 1049; *see also E.P. Lehmann Co. v. Polk's Modelcraft Hobbies,* 770 F.Supp. 202, 206 (S.D.N.Y.1991) (citing cases). The language of the statute states that it applies in cases, "notwithstanding the absence of competition between the parties...." § 368–d. Courts have held that this limits the statute to noncompetitors. They rely on a New York Court of Appeals case which describes the legislative intent as protecting marks from dissimilar products. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1165 (1977). This language, however, does not preclude competitive products from being covered; it is not controlling since it is only dictum. As Judge McLaughlin stated in *LeSportsac v. K Mart,* 617 F.Supp. 316, 319 (E.D.N.Y. 1985), if the "[l]egislature intended to make the absence of competition a prerequisite to § 368–d relief, it could easily have done so."

■ We hold that this statute is applicable to competitors as well as noncompetitors. Moreover, it is not preempted by the Lanham Act in that they each protect different rights. *Mead Data Cent., Inc. v. Toyota Motor Sale U.S.A.,* 702 F.Supp. 1031, 1040–41 (S.D.N.Y.1988), *rev'd on other grounds,* 875 F.2d 1026 (2 Cir.1989).

### (C) SEVERANCE OF COUNTERCLAIM

■ IPC asserts that its counterclaim against Nikon has been estopped collaterally by the court's action in severing the counterclaim from Nikon's claim and holding the bench trial prior to IPC's jury trial, and that IPC therefore has been deprived of its right to a jury trial on the counterclaim. *Lee Pharmaceuticals v. Mishler,* 526 F.2d 1115 (2 Cir.1975); *Heyman v. Kline,* 456 F.2d 123 (2 Cir.), *cert. denied,* 409 U.S. 847, (1972). Neither *Lee* nor *Heyman* are applicable in this case. They both involved situations where the district

court denied the defendants the right to a jury trial for their counterclaims. In the instant case, the court severed the counterclaim, allowing IPC to have a jury, but in a separate trial.

As for the issue of collateral estoppel, IPC's counterclaim for infringement is based on the alleged confusibility of the Smile camera by IPC and the Smiletaker by Nikon. The counterclaim alleges that "[t]he use of the 'SmileTaker' name and mark by [Nikon] is without permission and authority of [IPC] and constitutes an infringement of [IPC's] mark SMILE...." Nowhere does the complaint refer to the *Ikon* Smile or the *Nikon* Smiletaker, thus making no connection between the house name and product name. The counterclaim alleged only infringement of the product name.

There is no issue preclusion because of the severance of the counterclaim. IPC should not be denied a jury trial if it continues with its claim. Although IPC claims that it would be necessary for the jury to make a determination about the similarity between the IPC and Nikon marks, as stated above, IPC's action involves different claims from the instant case, alleging likelihood of confusion between "Smile" and "Smiletaker." These issues were not determined in the instant case. The court determined only that the house name Ikon is likely to be confused with Nikon.

IPC, however, argues that a trial of the issue of the likelihood of confusion between "Smile" and "Smiletaker" necessarily would involve a determination of the "house" names—Ikon and Nikon. Cases hold that under § 43(a) of the Lanham Act protecting a trade dress involves looking at the totality of the image of the product, such as its packaging, size, and color combination. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1535 (2 Cir.), *cert. denied*, 113 S.Ct. 510 (1992). In the instant case, IPC claims that trial of its counterclaim would involve looking at the house names in connection with the product names to determine the likelihood of confusion. In this case, however, the two names are not connected in the Ikon product and

are sufficiently detached. The totality argument therefore is weakened. Moreover, even if it would be necessary to include the house name as part of the totality of the package, its inclusion would be collateral only to the main claim involving the product names.

It was suggested at oral argument that IPC might be better off if its claim against Nikon were bound by a finding that the names are likely to cause confusion, since it appears that is precisely what IPC will try to prove to the jury. In any event, we hold that IPC will not be prejudiced by collateral estoppel in its claim against Nikon insofar as the issues to be determined in that case are sufficiently different from the instant case. We hold that IPC has not been deprived of its right to a jury trial.

(D) RECALL OF PRODUCTS

IPC claims that the recall order was unduly harsh under the circumstances, asserting that Nikon delayed the trial, causing it to last three years. IPC says that Nikon was in no hurry to get IPC products off the market and that a recall is not justified.

■ We hold that the recall order was appropriate. The district court has broad discretion as to recall orders which are part of permanent injunctions. *Perfect Fit Industries v. Acme Quilting Co.*, 646 F.2d 800, 805 (2 Cir.1981), *cert. denied*, 459 U.S. 832 (1982). As Nikon asserts, IPC was warned by its counsel that the trademarks were similar and that IPC should add to its mark to avoid confusion. IPC also withheld from its counsel its intention to enter the 35 mm market. This is evidence of bad faith on the part of IPC. Moreover, while affixing stickers on the cameras warning customers about Ikon's infringement might be said to be less harsh than a recall, there is no guarantee that retailers would affix the stickers. Further, IPC still could remove the trademark from the cameras and sell them to stores like Job Lot. Although IPC asserts it is a harsh remedy, there is no evidence in the record before us to show that the court abused its discretion in ordering the immediate recall.

## III.

To summarize:

The district court properly held that IPC violated the Lanham Act and the New York anti-dilution laws, and that its products should be recalled. There should not be issue preclusion on the counterclaim. IPC therefore was not deprived of a jury trial.

Affirmed.