**KOOKAÏ, S.A., Plaintiff,**

v.

**Eric SHABO, d/b/a Kikai and Kikai, Paris, Defendant.**

No. 96 Civ. 7340 (CBM).

United States District Court, S.D. New York.

Jan. 9, 1997.

Marshall Beil, Ross & Hardies, New York City, for plaintiff.

Andrew Moulinos, Astoria, NY, for defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, a designer and manufacturer of women's clothing and related accessories, makes this motion for a preliminary injunction enjoining defendant, the owner of a designer and manufacturer of similar goods, from using the names "Kikai" or "Kikai Paris" in connection with either his merchandise or the store in which he sells the merchandise. For the reasons stated below, this motion is granted.

## BACKGROUND

### I. Plaintiff's Business

Plaintiff Kookaï is a French fashion design and manufacturing company based in Paris. Plaintiff uses its mark on a wide variety of clothing, perfume, fashion accessories and other products targeted primarily to young women between the ages of 15 and 25. Nearly one third of plaintiff's stores are in France, and the rest are located in 40 countries throughout the world. However, plaintiff has no stores in the United States, although it does intend to open stores in the United States in the near future. Most relevant to these proceedings, plaintiff would like

to open a store in the SoHo section of Manhattan which is known as a fashionable shopping area.

Despite having no functioning stores in the United States, plaintiff has targeted American audiences in some limited ways. Since 1983, plaintiff has sold some of its products through retailers located primarily in New York and Los Angeles. It also has placed advertisements in magazines such as *Elle*, *Vogue*, and *Marie Claire*, which do appear on newsstands throughout New York, though plaintiff has to date restricted the advertisements to the French language versions of these magazines. Finally, plaintiff has registered the Kookaï[1] mark on the Principal Register of the Patent and Trademark Office (PTO) on May 14, 1991 for use on and in connection with clothing and cosmetics, including perfumes.

This mark is used in plaintiff's retail stores as well as on hang tags attached to plaintiff's merchandise. Some of plaintiff's products also bear the designation "Paris" beneath the "Kookaï" mark.

## II. Defendant's Business

Defendant is the owner of a women's clothing store located in the SoHo section of Manhattan under the name "Kikai" which opened in the summer of 1996. The style, shape and color of the hang tags that defendant uses on his clothing is similar to the label and hang tags that plaintiff uses. Specifically, both tags employ black tags with white lettering. Defendant has in the past included tags which also bear the name "Paris" underneath the word "Kikai", but he has represented to the court that he does not intend to distribute products with the "Paris" designation in the future. He has not attempted to remove those tags from items already in his store, however.

In June of 1996, one of plaintiff's representatives traveled to the United States upon hearing of the existence of defendant's store. He spoke with defendant at that time regarding the use of the name "Kikai." This was followed by a letter on June 27, 1996 to

defendant by plaintiff's counsel objecting to the names "Kikai" and "Kikai Paris." Shortly thereafter, this suit was filed.

## RELIEF SOUGHT

Plaintiff claims infringement of a registered mark under § 32 of the Lanham Act, false designation of origin under § 43(a) of the Lanham Act, dilution under § 43(c) of the Lanham Act, unfair competition, and injury to reputation. He presently seeks a preliminary injunction which enjoins defendant from using the names "Kikai" or "Kikai Paris".

At plaintiff's request, this court issued an Order to Show Cause on October 8 directing the defendant to appear and to show cause why a preliminary injunction enjoining defendant from using the "Kikai" name on its store and its merchandise should not be issued. A hearing was then held on October 31, 1996.

## ANALYSIS

A preliminary injunction should issue where the moving party demonstrates both irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Jackson Dairy v. H.P. Hood & Sons*, 596 F.2d 70 (2d Cir.1979). In the Second Circuit, this standard is used for alleged trademark infringements such as the one at bar. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Plaintiff argues that he can demonstrate both irreparable harm and likelihood of success on the merits.

## I. Likelihood of Success on the Merits

Plaintiff has raised three federal claims and two state law claims, arguing that it can demonstrate a likelihood of success on all of them. However, because the court finds that a likelihood of success on the merits is demonstrated under § 32 of the Lanham Act,

---

1. The name "Kookaï" has no particular meaning in French and is an entirely fanciful or arbitrary name.

there is no need for the court to examine the merits of the other claims raised.

## A. Introduction

Section 32 of the Lanham Act prohibits the use of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" where "such use is likely to cause confusion, or to cause mistake, or to deceive." 11 U.S.C. 1114(1)(a). According to the Second Circuit, to demonstrate a claim under this section, a plaintiff must show a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam).

In order to determine exactly what constitutes a likelihood of confusion, the Second Circuit examines eight factors, the so-called *Polaroid* factors, first articulated by Judge Friendly in the case of *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). These factors, which are intended to be a nonexclusive list, are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will "bridge the gap" between the two markets; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers. None of these factors is dispositive. Rather, "[t]he weighing of the *Polaroid* factors should support the trial court's ultimate conclusion regarding infringement." *Banff, Ltd. v. Federated Dep't. Stores, Inc.*, 841 F.2d 486 (2d Cir.1988). An analysis of these factors leads the court to believe that plaintiff will likely be able to demonstrate at trial that defendant is in violation of § 32 of the Lanham Act.

## B. The *Polaroid* Factors

### 1. Strength of Plaintiff's Mark

The strength of the mark refers to its distinctiveness or its tendency to identify the goods sold under the mark as emanating from a particular source. *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131

(2d Cir.1979). The golden arches used by McDonald's restaurants would be the paradigmatic example of a strong mark.

The Second Circuit has repeatedly held that an arbitrary or fanciful mark, such as plaintiff's mark, which does not suggest the nature of plaintiff's business, is the strongest of all marks. *See McGregor–Doniger*, 599 F.2d at 1131; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2d Cir.1987) ("As an arbitrary mark ... Mobil's symbol deserves "the most protection the Lanham Act can provide.")

Defendant argues that the Kookaï label is "hardly known" in the United States. First of all, the evidence seems to indicate that this is not entirely true. As was mentioned earlier, plaintiff's products have been sold domestically since 1983. But even if the assertion that Kookaï is "hardly known" in the United States were true, it would not significantly affect the analysis. Proof that a particular mark is known and has a "secondary meaning" associated with a particular product is not necessary when the mark in question is arbitrary or fanciful. *McGregor–Doniger*, 599 F.2d at 1132 ("The many cases suggesting that a mark found to be ... arbitrary or fanciful (i.e. more than merely descriptive) is entitled to protection without proof of secondary meaning are correct ..., for any term that is more than descriptive can be established as a valid mark which others may not infringe.")

Accordingly, the court finds that this factor tips heavily in favor of plaintiff.

### 2. Degree of Similarity Between the Two Marks

The court finds that the marks "Kookaï" and "Kikai" are confusingly similar in two different ways. First of all, the marks are visually quite similar: both have black backgrounds with white print lettering. Although the fonts differ slightly, there is undoubtedly a confusing similarity between the two of them. In addition, the names are pronounced almost identically, with only a single vowel change between the two "K"'s distinguishing them. *See Nikon, Inc. v. Ikon*

*Corp.,* 987 F.2d 91 (2d Cir.1993) (holding that the names Nikon and Ikon were both visually similar and sounded similar as well).

The court therefore finds that this factor tips heavily in favor of plaintiff as well.

### 3. Competitive Proximity of the Goods or Services

The fashion wear of both Kookaï and Kikai compete directly against one another. The clothing and other accessories introduced at the hearing lead to the unmistakable conclusion that the two businesses targeted the same audience; to wit, young women approximately between the ages of 15–25. This factor likewise tips heavily in plaintiff's favor.

### 4. Likelihood of Bridging the Gap

As the Second Circuit has recently held, "[t]his factor looks to either the likelihood that [the plaintiff] will enter [the defendant's] business or the average customer's perception of the likelihood that the defendant would enter the plaintiff's market." *Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 963 (2d Cir.1996) (citations omitted). Under either formulation, this factor tips in favor of plaintiff. This is because there is no "gap" to bridge in this case. Plaintiff and defendant are already in the same market.

### 5. Actual Confusion

Plaintiff has not produced any evidence of actual confusion. Courts in some cases do not weigh this factor against a plaintiff if evidence of actual confusion would be particularly difficult to obtain. *See, e.g., Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 78 (2d Cir.1988) (holding that a magistrate properly declined to make any negative inference from the plaintiff's lack of evidence of actual confusion where the defendant's product had not been on the market for a significant period of time.) Plaintiff in this case would have had a difficult time offering a significant amount of evidence of actual confusion given the short period of time that the "Kikai" store has been in operation.

On the other hand, plaintiff should have been able to produce some evidence of actual confusion. In fact, it did not show a single instance of confusion, despite the fact that by its own admission, it is a large retailer in 40

other countries and many tourists travel to the SoHo section of Manhattan to shop. Plaintiff's Proposed Findings of Fact and Conclusions of Law, pp. 2, 10. *See McGregor–Doniger,* 599 F.2d at 1136 (recognizing that evidence of actual confusion may be difficult to obtain but holding that trial judge's inference that there was no likelihood of confusion was proper because the plaintiff failed to identify a single instance of actual confusion).

The court holds that the lack of evidence in this case is not so significant that it justifies an inference that there is no likelihood of confusion, but it is a factor which weighs against plaintiff.

### 6. Good Faith

This factor concerns "whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and any confusion between his and the [plaintiff's] product." *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474 (2d Cir. 1996). Defendant claims that he had never heard of Kookaï before opening his store and that therefore his actions were all taken in good faith. He also points to the fact that, when trying to register his own trademark under the name "Kikai," he conducted a search in the PTO to see if any names were in conflict with his name, and the name "Kookaï" did not appear. He further claims that he had originally attempted to seek a trademark under the name "Kika" which, according to defendant, is Israeli slang for "a nice beautiful girl." Hearing Transcript, p. 106. However, since the name "Kika" was taken, he chose "Kikai".

There is sufficient evidence, however, from which the court concludes that there are serious questions surrounding defendant's veracity and credibility. First of all, as was mentioned earlier, the style of the hang tags and labels which defendant uses is strikingly similar to that of plaintiff. Secondly, the fact that defendant used the word "Paris" on some of his labels is strong evidence of bad faith in light of the fact that his store does not have and has never had any affiliation with Paris. Finally, defendant's explanation regarding his selection of the mark "Kikai"

appears nowhere in his affidavit and was asserted for the first time at the hearing.

Thus, the court finds that there is enough evidence of bad faith to weigh this factor in favor of plaintiff.

### 7. The Quality of Plaintiff's Product

This factor centers on whether "the good reputation associated with [plaintiff's] mark" could be "tarnished by [the] inferior merchandise of the [defendant]." *WWW Pharmaceutical v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir.1993) (citations omitted). Although plaintiff insists that defendant's goods are of inferior quality, it has produced no reliable evidence in support of this claim. Furthermore, the products from each party submitted to the court as exhibits do not appear to be of differing quality. Accordingly, the court finds that this factor weighs in favor of defendant.

### 8. The Sophistication of Purchasers

The final *Polaroid* factor which must be considered is the sophistication of purchasers. In the words of the Second Circuit, "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods, is the touchstone." *McGregor–Doniger*, 599 F.2d at 1137. Courts presume that more sophisticated purchasers are less likely to be misled or confused even if a party uses a mark similar to that of a competitor.

Thus, purchasers of fruit punch are not sophisticated and would not carefully discriminate between confusingly similar marks on different brands because of the product's "modest cost." *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir. 1979). On the other hand, retail purchasers are more sophisticated and are not as likely to be confused by similar marks. *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 626 (2d Cir.1983).

Plaintiff seeks to argue that its target audience of young women between the ages of 15–25 is both fashion-conscious and unsophisticated, an assertion that the court finds untenable. If the women which plaintiff targets are indeed fashion-conscious, which

seems to be the case, they are likely to exercise a significant degree of care in purchasing their clothing, since the name of the particular designer is important in the fashion world. *See McGregor–Doniger*, 599 F.2d at 1137–38 (holding that trial court did not abuse its discretion in deciding that purchasers of women's sportswear were "sophisticated and knowledgeable.")

However, though this factor does weigh in the defendant's favor, there are two mitigating considerations which must be mentioned. First of all, as was mentioned earlier, the two marks are very similar, and it is possible that even a sophisticated purchaser would be confused between them. Secondly, these individuals, while sophisticated, are not professional clothing purchasers and cannot be expected to have the same level of knowledge as professionals. Accordingly, this factor tips only slightly in defendant's favor.

### C. Balancing the Factors

Giving due weight to each of the factors listed above, the court holds that plaintiff has demonstrated a likelihood of success on the merits. Five factors lie in its favor, and only three lie in defendant's favor. Furthermore, three of the factors which favor plaintiff, namely the strength of plaintiff's mark, the degree of similarity between the two marks, and the competitive proximity of the goods, tip significantly in plaintiff's favor while there are no factors which tip heavily in the other direction.

## II. Irreparable Harm

A likelihood of success on the merits is not enough to merit a preliminary injunction; a party must also show irreparable harm. However, the Second Circuit has consistently held that:

> A preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product. Our cases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm.

*Church of Scientology v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir.1986).

In light of this, the court holds that plaintiff has established irreparable harm under the law of this Circuit.

### III. Conclusion

Plaintiff has established the two requirements necessary to obtain a preliminary injunction: likelihood of success on the merits and irreparable harm. The court therefore grants plaintiff's motion for a preliminary injunction under § 32 of the Lanham Act.