William G. CARLOS; Salvatore Ardisi; Michael Armistead; Paul Caccia; Michael Christiansen; William Frattarola; Russell Infantino; Raymond Nikisher; Vito Rizzi; Peter Farrell; Roger Schreader; Lisa Carlucci; Katherine Brown; William Bujarski; Gary Cer-

rone; Joseph Dusavage; Richard Hatfield; Thomas Johanson; David Orce; David Ryan; Michael Gibbons; Margaret Bradley; Virginia Irwin; Mary Jane Fredeman; Ann Marie Repanti, Plaintiffs–Appellants–Cross–Appellees,

Jim Gordon; George Gallinger; Maureen Petranchik; Mariam D'Alessio; Thomas D'Amico, Plaintiffs–Appellants,

v.

Carmelo J. SANTOS; Charles Ferrante, Sr.; Samuel R. Gambino; Town of Putnam Valley, New York, Town of Putnam Valley; the Town Board of the Town of Putnam Valley, New York, Defendants–Appellees–Cross–Appellants.

Nos. 2337, 2338 and 2339, Dockets 97–7523, 97–7619 and 97–7631.

United States Court of Appeals, Second Circuit.

Argued June 10, 1997.

Decided Aug. 15, 1997.

---

William J. Madonna, Bronx, NY, for Plaintiffs-Appellants.

Julius W. Cohn, White Plains, NY (Sweeney Cohn Stahl & Vaccaro, White Plains, NY, of counsel), for Defendant-Appellee-Cross-Appellant Gambino.

David O. Wright, Shrub Oak, NY, for Defendant-Appellee-Cross-Appellant Ferrante, Sr.

(William H. Bave, Jr., Wilson, Bave, Conboy & Bave, White Plains, NY, of counsel and on the brief), for Defendants-Appellees-Cross-Appellants.

Before: OAKES and PARKER, Circuit Judges, and NICKERSON, District Judge.*

PARKER, Circuit Judge:

Members of the Putnam Valley, New York, police force brought three suits against certain members of the town board of Putnam Valley and against the Town of Putnam Valley itself (the "Town"). The plaintiffs alleged that the board members planned to vote to abolish their police department as a means of retaliating against the Chief of Police (the "Chief") for exercising First Amendment rights. They sought a permanent injunction and damages. The district court (Charles L. Brieant, *Judge*), consolidated the three actions, severed the claims for monetary damages, and held a bench trial on the equity issues. The court dismissed the claims against the individual defendants, denied the plaintiffs' request for a permanent injunction, but required the defendants to wait 120 days before implementing any abolition of the force. The court then granted a stay pending appeal. We affirm all aspects of the district court's opinion except the 120-day waiting period, which we vacate, and one of the findings of fact made by the court, which we also vacate.

## I. BACKGROUND

The Town of Putnam Valley is one of six towns within Putnam County, New York. Putnam Valley and two other towns have

Jonathan Lovett, White Plains, NY (Lovett & Gould, White Plains, NY, of counsel), for Plaintiffs-Appellants-Cross-Appellees.

* The Honorable Eugene H. Nickerson, of the United States District Court for the Eastern District of New York, sitting by designation.

their own police forces; the remaining three towns do not. The County Sheriff provides police protection to the towns that do not have their own forces, and backup services to the towns that do. Defendants Santos, Gambino, and Ferrante are members of the town board of Putnam Valley and have stated their intention to vote as soon as possible to abolish the town police force. They constitute a majority of the board.

Apparently there has been bad blood between plaintiff Carlos (the Chief) and the defendants. The defendants have taken the position that the town police force is unnecessary and expensive, especially because the Town has had to settle several lawsuits involving the police force. The Chief, on the other hand, charges that the Board members' proffered motives for abolishing the police force are merely pretexts for retaliation against him for his political involvement.

In September and October 1996, Carlos and other members of the police force brought three separate lawsuits against the defendants, alleging that the defendants were depriving them of property and retaliating against them for exercise of political speech, in violation of 42 U.S.C. § 1983, the First Amendment, and the Fourteenth Amendment. Jurisdiction was premised on the presence of a federal question. *See* 28 U.S.C. § 1331. The three actions were consolidated by the district court.

On November 1, 1996, Judge Brieant issued a preliminary injunction preventing the abolition of the police department. On November 8, 1996, the defendants consented to extend the injunction until trial, which was set for December 3, 1996. Judge Brieant severed the jury issues and heard trial on the equity issues. The trial concluded on December 13. On December 17, 1996, defendant Ferrante filed a Notice of Appeal from the preliminary injunction. The appeal to this Court was expedited, but a decision was not made until March 17, 1997. By that time, Judge Brieant was prepared to issue his final decision, so this Court remanded the case to Judge Brieant so that he could do so. On April 7, 1997, the district court issued its findings of fact and conclusions of law, which denied an injunction, dismissed all claims

asserted against the defendants in their individual capacities, dismissed third party claims, but granted the plaintiffs a stay pending appeal and imposed a 120–day waiting period should the Board vote to abolish the police department. The court supplemented these findings and conclusions on April 17, holding that New York law did not require a mandatory public referendum prior to abolishing the police department. Judgment was entered on these two orders on April 17.

The plaintiffs have appealed, and the defendants have cross-appealed.

## II. DISCUSSION

### A. *Liability of the Individual Defendants*

The complaints alleged that the defendants engaged in the following specific acts:

(1) Before Santos took office, he met with Carlos in order to convince Carlos to retire;

(2) the defendants conducted secret meetings in order to further their retaliatory plan;

(3) the defendants provided scurrilous information to the FBI, which caused Carlos's application to participate in training at the FBI Academy to be rejected;

(4) the defendants hired a consultant to review the police department and produce a negative report;

(5) the defendants held a televised town board meeting "solely for the purpose of staging vicious personal attacks on the Chief of Police";

(6) the defendants encouraged a third party (one Olsen) to institute state litigation designed to embarrass the Chief;

(7) Ferrante, "purportedly acting as 'private citizen Charles Ferrante,'" made false allegations of police misconduct after commencement of this litigation.

Following trial, Judge Brieant made findings regarding these allegations. He found that Santos had indeed met with Carlos in order to convince him to retire. He did not, however, credit the plaintiffs' allegation that the defendants provided scurrilous information

to the FBI: he stated that "[t]he source or names of persons conveying the adverse information cannot be identified, but it did not necessarily come from the defendants, as others in law enforcement and politics have come to dislike the Chief over the years." He found that the defendants did hire a consultant, but that the consultant's report was not particularly derogatory. He found that there was insufficient information to resolve the allegation that Ferrante had made false allegations of police misconduct. Finally, he found that all three defendants' motivation for their actions was essentially to save money for the taxpayers.

The plaintiffs argued that the defendants were liable under 42 U.S.C. § 1983. Judge Brieant disagreed, and dismissed all claims against the individual defendants on the ground of legislative immunity. He stated the following:

> The Court concludes that the decision as to whether or not this Town should have its own police department is essentially *legislative and political* in its character, rather than administrative. The issue may be resolved by a majority of the Town Board after a public hearing. Its power to do so is absolute and unreviewable even if impelled by mixed motives, some of which, as in this case, are or may be political, invidious, or retributive.

> It is clear that the individual members of the Town Board are absolutely immune from personal liability under 42 U.S.C. § 1983 for making *legislative* decisions of the sort present here, including budgetary allocations and the decision of whether or not any town department or position should be maintained and continued, or abolished.

On appeal, the plaintiffs argue that their complaints against the defendants in their individual capacities should not have been dismissed, because the alleged wrongdoings included conduct that was "non-legislative in nature" and that occurred "outside of the legislative forum." Therefore, they argue, the conduct does not come within the legislative immunity doctrine.

### 1. *Under Color of Law*

Section 1983 provides a right of action against any person who "under color of" state law subjects another person to a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Our first inquiry, therefore, is whether the actions alleged by the plaintiffs come within the definition of "under color of" law.

 " 'The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." ' " *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941))), *cert. denied*, —— U.S. ——, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997). Santos's meeting with Carlos was not a "misuse of power, possessed by virtue of state law." Santos had not yet even taken office: he possessed no power by virtue of state law to misuse. Nor did state authority enable the defendants to conduct their secret meetings, encourage a third party to sue, or, in Ferrante's case, bring a police complaint in his own name. Any citizen may perform these acts: they were not "made possible only because the wrongdoer[s] [were] clothed with the authority of state law." Thus, plaintiffs' allegations (1), (2), (6) and (7) concern acts that were not undertaken "under color of law." Whether true or not, they could not form the basis of liability under § 1983.

The plaintiffs' allegation (3), that the defendants provided scurrilous information to the FBI, is on slightly different footing. If the defendants had done this deed in their official capacities, they might have been acting under color of law. But Judge Brieant found that the plaintiffs had not carried their burden of proof that the defendants did indeed supply this information, and the record reveals that this finding is not clearly erroneous. Therefore, while allegation (3) might have been viable had it been proved, it was

not proved and therefore was also properly dismissed.

■ Allegations (4) and (5), however, do relate to actions taken under color of law. The defendants were able to hire a consultant to review the police force (allegation (4)), and were able to hold a public hearing (allegation (5)), solely because they were "clothed with the authority of state law," i.e., the authority vested in them as town board members.

Thus, all of the allegations except (4) and (5) relate to actions that were not taken under color of law. Therefore, they may not form the basis of a claim under § 1983. They were properly dismissed.

### 2. Legislative Immunity

■ Having determined that the plaintiffs' allegation (4) and (5) were performed under color of state law, our next inquiry is whether these alleged misdeeds come within the legislative immunity exception to § 1983. There has long been recognized an absolute legislative immunity exception to § 1983 liability for individuals. See Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). In Goldberg v. Town of Rocky Hill, 973 F.2d 70 (2d Cir.1992), and United States v. City of Yonkers, 856 F.2d 444 (2d Cir.1988), rev'd on other grounds sub nom. Spallone v. United States, 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), we noted in dicta that at least nine other federal circuit courts have held that the absolute legislative immunity doctrine applies to local legislators, see Goldberg, 973 F.2d at 72; City of Yonkers, 856 F.2d at 456, and in Orange Lake Associates, Inc. v. Kirkpatrick, 21 F.3d 1214 (2d Cir.1994), we assumed that it did, see id at 1224. We therefore now explicitly hold that the doctrine of absolute legislative immunity under § 1983 applies to local legislators.

■ We next ask whether acts (4) and (5) specifically come within the protection of that doctrine. "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." Hill v. City of

New York, 45 F.3d 653, 660 (2d Cir.1995); accord Forrester v. White, 484 U.S. 219, 224, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555 (1988); Pinaud v. County of Suffolk, 52 F.3d 1139, 1147 (2d Cir.1995). The facts of Tenney are quite similar to plaintiffs' allegation (5). In Tenney, the plaintiff alleged that members of a committee of the California Legislature, the Senate Fact–Finding Committee on Un–American Activities, had held a hearing "not for a legislative purpose," but in order to "intimidate and silence" the plaintiff. See Tenney, 341 U.S. at 370, 71 S.Ct. at 785. The Court held that legislative immunity protected the legislators from the plaintiff's suit and stated that "[i]nvestigations, whether by standing or special committees, are an established part of representative government." Id. at 377–78, 71 S.Ct. at 789. Because of the close parallel between the allegation here——that legislators held a hearing for the purpose of traducing the plaintiff——and the allegation in Tenney——that legislators held a hearing for the purpose of intimidating the plaintiff——we hold that the defendants' decision to hold the hearing is protected by absolute legislative immunity. Therefore, we need not inquire as to whether the defendants' purpose in holding the hearing was actually as the plaintiffs allege.

■ For much the same reason, we conclude that allegation (4) is also barred by the absolute legislative immunity doctrine. Like the hearing, the consultant's report was part of a legislative investigation of the police department. Moreover, legislators should not be limited in their methods of investigation to hearings: reports by hired consultants are a useful tool in legislative inquiries. Therefore, the plaintiffs' allegation (4) was also properly dismissed as against the individual defendants.

■ Thus, the plaintiffs' claims against the defendants in their individual capacities were properly dismissed. A viable § 1983 claim against a town legislator in his individual capacity must allege acts taken under color of state law, but not acts that were legislative in nature. Whether they are true or not, the plaintiffs' allegations do not concern acts that fall into this category. Therefore, the defen-

dants in their individual capacities were properly dismissed from the suit.

### B. Permanent Injunction Against the Town

Unlike the individual defendants, the Town cannot avail itself of legislative immunity in defending against a § 1983 claim. *Goldberg*, 973 F.2d at 74. Below, the defendants sought an injunction against the Town, preventing the town from abolishing its police force. Judge Brieant denied this request. He stated that the plaintiffs could look to the damages trial for redress, and that the plaintiffs retained their rights under N.Y. Civ. Serv. Law § 80 *et seq.* to reinstatement if, for example, the defendants subsequently hired a new police force. He stated that an adequate remedy at law could be had, and that "it would be absurd to require a municipality to continue indefinitely and fund and [sic] activity which it wishes to abandon, simply on the ground that the decision to do so was a product of mixed motives."

 We review a denial of a request for a permanent injunction for abuse of discretion. *See Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993). "Abuse of discretion can be found if the district court relied upon a clearly erroneous finding of fact or incorrectly applied the law." *Id.* (citing *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir.1992)). Moreover, "injunctive relief where an adequate remedy at law exists is inappropriate." *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996).

 The only argument that the plaintiffs offer on appeal in favor of an injunction is the argument that New York law protects civil servants from bad faith abolition of their jobs. This argument is incomplete: it posits a right, but does not explain why a legal, as opposed to equitable, remedy for that right would be inadequate in this case. Presented with no substantive argument as to the impropriety of Judge Brieant's decision, we affirm it.

### C. State Law Issues

At trial, the plaintiffs argued that the police department could only be abolished after a public referendum in Putnam Valley. Judge Brieant rejected this argument. The plaintiffs now contend that this was contrary to several provisions of New York law.

#### 1. New York Municipal Home Rule Law § 23

 First, the plaintiffs point out that the members of Putnam Valley's town board are statutorily vested with the power to appoint a chief of police and subordinate police officers and the power to create or abolish a board of police commissioners or to act as commissioners themselves. They also point out that New York law provides that "a local law shall be subject to mandatory referendum if it ... [a]bolishes, transfers or curtails any power of an elective officer." *See* N.Y. Mun. Home Rule Law § 23(2)(f). They argue that abolishing the police force of Putnam Valley will abolish the appointment powers of the town board members (i.e., elective officers within § 23), and so must be put to a referendum.

Judge Brieant properly rejected this argument:

> The power referred to [by the plaintiffs] apparently is the power to vote on filling vacancies in the Department. This power itself will not have been "abolished" and certainly it has not been transferred.... [T]his Town Board and its successors retain in full their powers of appointment of any police officers who are to be appointed, as well as the power to establish or abolish any town department in the future. The statute cited simply protects the powers of the office, which will remain the same the day after the proposed local law is adopted.

The district court's ruling on this issue is affirmed.

#### 2. The Putnam County Police Act

 The plaintiffs also relied on the Putnam County Police Act in the court below, and renew their arguments relating to it here. The Act provides, in pertinent part, the following:

**§ 1. Establishment, organization and operation of police departments in all towns in the county of Putnam.** Notwithstanding any other provisions of law, the establishment, organization and operation and all matters concerning police or police departments in all towns in the county of Putnam shall be governed by the provisions of this act.

**§ 2. Establishment of town police department.** The town board of any town in Putnam county which now has a police force or police department, or employs a police officer or police officers ... or which hereafter employs such police officer or police officers ... shall establish a police department and may appoint a chief of police, and such lieutenants, sergeants and patrolmen as may be needed and fix their compensation.

1941 Laws of New York, Ch. 610. The plaintiffs argue that this Act requires every town in Putnam County to have a police force.

This act uses the phrase "employs a police officer" distinctly from the phrase "establishes a police department," yet the plaintiffs' interpretation would equate the two phrases. We read the statute as stating that *if* a town in Putnam County has a police force of any sort, *then* it must have a police department, i.e., a division of local government dedicated to the policing function. If the town Board passes the threatened bill, there will be *no* police employed by the Town of Putnam Valley, and so the Putnam Valley Police Act will not apply to Putnam Valley. We therefore reject the plaintiffs' argument that the Putnam County Police Act is an obstacle to the defendants' threatened action.

### 3. Other State Law Claims

The plaintiffs also raise several arguments based on the New York Constitution and the New York Statute of Local Governments in its briefs. These arguments were not raised below, and so are waived.

Thus, New York law (as presented to the district court) presents no obstacle to the defendants' proposed action.

### D. *The 120–Day Waiting Period*

■ The defendants cross-appeal the issue of the 120–day waiting period Judge Brieant imposed on them, should they actually abolish the police force. The plaintiffs also appeal the 120–day period, arguing that it is too short. The Judge stated the following regarding this time limit:

> While the decision to abolish the Police Department is legislative, the *manner* in which it shall be accomplished is *administrative*, and this Court has and should exercise its supplemental jurisdiction to avoid the implementation of any local law in a *manner* which would be arbitrary and capricious, or inflict unusual injury upon any of the persons affected, or the general public. Once it becomes absolutely certain that the Putnam Valley Police Department will be abolished, it will require at least 120 days thereafter in order for the Sheriff of Putnam County, with the support and cooperation of the County Executive and the County Legislature to provide for the necessary funds and personnel and facilities to effectuate the necessary transition smoothly and to prevent a dangerous gap or hiatus in protection of the general public interest against crime and emergencies.

■ The Judge did not specify what state law claim he was subjecting to supplemental jurisdiction. The Judge's use of the terms "arbitrary and capricious" and "administrative" suggests an Article 78 proceeding, a New York procedure in which administrative implementations of legislative acts are reviewed. However, "[i]t is well established that an article 78 proceeding is not the proper vehicle to test the validity of a legislative act," *Kamhi v. Town of Yorktown,* 141 A.D.2d 607, 608, 529 N.Y.S.2d 528, 529 (2d Dep't 1988), and the term "legislative act," for purposes of Article 78, "applies where ... the dispute centers upon a rule of general applicability rather than an *ad hoc* determination of an individual party's particular rights," *Costantakos v. Board of Educ.,* 105 A.D.2d 825, 825, 482 N.Y.S.2d 27, 28 (2d Dep't 1984) (citing *Solnick v. Whalen,* 49 N.Y.2d 224, 231–32, 401 N.E.2d 190, 194–95,

425 N.Y.S.2d 68, 72–73 (1980)). The effective date of the proposed action would be a "rule of general applicability" and so would not be subject to review in an Article 78 proceeding. The proper vehicle for an attack on the threatened action would be a declaratory judgment action, *see Kamhi*, 141 A.D.2d at 609, 529 N.Y.S.2d at 530, but, as we have seen above, the district court properly rejected the arguments that might have supported a request for a declaratory judgment.

Thus, the court erred when it required the defendants to wait 120 days before making an abolition of the police department effective. This holding of the district court is vacated. The defendants may abolish the police force immediately, should they choose to do so.

E. *Plaintiffs' Proposed Finding of Fact ¶ 31*

Finally, the defendants argue that the court below committed clear error when it adopted the plaintiffs' proposed finding of fact ¶ 31, which stated the following:

> 31. Thereafter and in October of 1996, Gambino and Santos met with senior citizens' groups in Putnam Valley at which time the Supervisor advised those citizens that after abolition of the Police Department, police coverage in the Town would be "sporadic at best." While Gambino and Santos were engaged in meetings with the seniors, Ferrante was advising town residents that the Putnam Valley Police headquarters would be used as a sub-station by the Sheriff's Department.

We have reviewed the record and find that the meeting with the senior citizens is supported by the record and not clearly erroneous. The last sentence, however, regarding Ferrante's activities, finds no support in the pages cited in the proposed finding of fact incorporated by the court. The plaintiffs have made no effort to counter the defendants' argument that this finding of fact was erroneous. We therefore vacate this finding of fact by the district court.

### III. CONCLUSION

The district court's ruling is affirmed, except insofar as it imposed a 120–day waiting period on the defendants, and insofar as it adopted the final sentence of plaintiffs' proposed finding of fact ¶ 31. In these latter respects, the court's ruling is vacated.