**MALACO LEAF, AB, Plaintiff,**

v.

**PROMOTION IN MOTION, INC. dba The Promotion in Motion Companies, Inc., and Michael Rosenberg, personally and individually, Defendants.**

**Promotion In Motion, Inc., Counterclaim–Plaintiff,**

v.

**Malaco Leaf, AB, Counterclaim–Defendant.**

**No. 01 Civ.7600 (WHP).**

United States District Court, S.D. New York.

Oct. 1, 2003.

Philippe Bennett, Robert E. Hanlon, Lara A. Holzman, Coudert Brothers LLP, New York, NY, for plaintiff.

Richard S. Mandel, Jonathan Z. King, Cowan, Liebowitz & Latman, P.C., New York, NY, for defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This action involves a smorgasbord of trademark infringement, dilution and false advertising claims relating to Malaco Leaf, AB's ("Malaco") fish-shaped gummy candy, known as "Swedish Fish." Specifically, Malaco asserts claims for infringement and dilution of its product configuration trade

dress pursuant to 15 U.S.C. § 1125(a) and (c), trade dress infringement of its packaging pursuant to 15 U.S.C. § 1125(a), trademark infringement pursuant to 15 U.S.C. §§ 1114, 1125(a), false advertising pursuant to 15 U.S.C. § 1125(a), injury to business reputation and product configuration trade dress dilution pursuant to N.Y. Gen. Bus. L. § 360–*l* (formerly Section 368–d), and common law unfair competition and dilution. In particular, Malaco alleges that defendants Promotion In Motion, Inc. ("PIM") and Michael Rosenberg ("Rosenberg") (collectively, the "defendants") infringed and diluted the configuration and packaging for Swedish Fish, infringed Malaco's trademarks SWEDISH FISH and THE ORIGINAL SWEDISH FISH (the "Marks"), and engaged in false advertising by promoting their fish-shaped gummy candy (the "Famous Sqwish Candy Fish") as "Famous." PIM counterclaims for cancellation of Malaco's federally registered trademark, SWEDISH FISH.[1] Defendants move for summary judgment on all of Malaco's claims. For the reasons set forth below, defendants' motion for summary judgment is granted.

## I. BACKGROUND

The facts are not in dispute. Since 1956, Malaco has manufactured soft, fish-shaped gummy candy[2] under the name "Swedish Fish." Malaco is a Swedish company that distributes Swedish Fish through its exclusive licensee Jaret International (CS), Inc. ("Jaret"), owned by Cadbury Trebor Allan, Inc. ("Trebor Allan"), and its predecessors-in-interest.[3] Jaret is also responsible for developing advertising and marketing strategy for Swedish Fish. Jaret distributes Malaco's Swedish Fish throughout the United States via numerous distribution channels including drug stores, mass merchandisers, grocery stores, convenience stores, vending distributors, club stores, and bulk wholesalers and retailers. Malaco's Swedish Fish is sold in a variety of packages for retail sale, and in bulk for repackaging or sale. Malaco is also the owner of the federally registered trademark SWEDISH FISH, U.S. Reg. No. 1,273,762, as well as the unregistered mark THE ORIGINAL SWEDISH FISH, both of which are used in the marketing for Swedish Fish.

Founded in 1980, PIM is a primary marketer of a wide variety of confectionary products, including a competitive gummy fish-shaped candy named "Famous Sqwish Candy Fish," various gummy bears, worms, dinosaurs, dolphins and sharks,

---

1. The parties did not file dispositive motions concerning PIM's counterclaim.

2. Soft and chewy candy is generally categorized by the industry as either "gummy" if it has a primarily gelatin base, or "juju," if it has primarily a starch base. (Deposition of Frank Galatolie, dated March 20, 2002 ("Galatolie Dep.") at 130–31; Defendants' 56.1 Statement ("Def.'s 56.1 Stmt.") ¶ 3.) For purposes of uniformity, this Court refers to the parties' products as "gummy" candy.

3. Malaco's Swedish Fish was initially manufactured exclusively by Malaco in Sweden. In the late 1970's or early 1980's, production was gradually switched to M & A Candy Co Ltd. in Canada, a joint venture between Malaco and a Canadian company Allan Candy,

Ltd. In 1995, Allan Candy affiliated with Cadbury Schwepps PLC, resulting in the formation of a new company, Trebor Allan, Inc., which later became Cadbury Trebor Allan and ultimately took over all responsibility for manufacturing Swedish Fish candy in the United States. In 1997, Cadbury Trebor Allan acquired Jaret and effectively combined all manufacturing and distribution responsibilities for Swedish Fish under common ownership. (Compl. ¶ 9; Jaret Dep. at 40–41, 109–12; Deposition of Paul Sullivan, dated Feb. 20, 2002 ("Sullivan Dep.") at 10–15, 17–18, 47–50, 129, 132, 135; Johansson Dep. at 287–89; Galatolie Dep. at 6–7, 128, 245–46; Def.'s Exs. Z & AA.)

and other candy products. As a primary marketer, PIM promotes products manufactured by its suppliers under in-house brands or through third party licenses. Rosenberg is PIM's President and Chief Operating Officer. Rosenberg became interested in marketing a branded candy fish after seeing small, soft red gummy fish at Ferrara Pan, a manufacturer that sells gummy fish to several different companies. Ferrera Pan, one of PIM's major suppliers, agreed to supply PIM with the product. In anticipation of creating a brand around that product, PIM filed an intent-to-use trademark application for the mark THE ORIGINAL SQWISH CANDY FISH on September 22, 2000. On December 28, 2000, Malaco's counsel sent a cease and desist letter to PIM's trademark attorney objecting to PIM's use of THE ORIGINAL SQWISH CANDY FISH mark. On January 22, 2001, PIM notified Malaco it was withdrawing its intent-to-use application in favor of a different trademark, FAMOUS SQWISH CANDY FISH, similar to a mark, NUCLEAR SQUORMS, it was already using for promotion of its gummy worms. In 2001, PIM filed a trademark application for the FAMOUS SQWISH CANDY FISH mark, U.S.App. No. 76/197,860, and introduced its candy into niche markets, such as the fundraising and movie theater candy sectors. On August 15, 2001, Malaco filed the instant infringement, dilution and false advertising action against defendants.

## II. *SUMMARY JUDGMENT STANDARD*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). The movant may meet this burden by demonstrating a lack of evidence to support the nonmovant's case on a material issue on which the nonmovant has the burden of proof. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. In evaluating the record to determine whether there is a genuine issue as to any material fact, the "evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. *PRODUCT CONFIGURATION TRADE DRESS INFRINGEMENT & DILUTION*

Malaco asserts three claims based on the fish-shaped product design of the Swedish Fish: (1) infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) dilution under the Federal Trademark Dilution Act ("FTDA"), 15

U.S.C. § 1125(c); and (3) dilution under Section 360–*l* (formerly Section 368–d) of the New York State General Business Law. Defendants argue that Malaco cannot sustain its claims of trade dress infringement and dilution of the fish shape and design of its Swedish Fish. Specifically, defendants argue that Malaco's product configuration in its Swedish Fish is unprotectable because it is (1) generic, and (2) functional. (Defendants' Memorandum of Law, dated August 16, 2002 ("Def.'s Br.") at 3–12.) Defendants further assert that even if the product configuration of Malaco's Swedish Fish were protectable, it cannot meet the requirements of federal and state dilution law because its product configuration is weak and diluted due to extensive third party use of similar fish-shaped candy designs. (Def.'s Br. at 12–13.)

### A. Product Configuration Trade Dress Infringement

 "[T]rade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer." *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 999 (2d Cir.1997). The Lanham Act protects both registered and unregistered trade dress. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). A plaintiff asserting an action for trade dress infringement must demonstrate: (a) that its trade dress is entitled to protection under the Lanham Act because it is inherently distinctive or has acquired distinctiveness; (b) a likelihood of confusion between the parties trademarks and between their trade dresses; and (c) that its trade dress is non-functional. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir.1997); *Fun–Damental Too*, 111 F.3d at 999; *see also* 15 U.S.C. § 1125(a)(3) (2003)[4]. As opposed to other types of trade dress, such as packaging trade dress, a trade dress based on the design of a product can never be inherently distinctive. *Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212–215, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001). Instead, it must have acquired distinctiveness, otherwise known as secondary meaning, to be protected. *Samara Bros.*, 529 U.S. at 212–215, 120 S.Ct. 1339; *Yurman*, 262 F.3d at 115. Courts "exercise 'particular caution when extending protection to product designs.' " *Yurman*, 262 F.3d at 114 (quoting *Landscape Forms*, 113 F.3d at 380). Indeed, "product design almost invariably serves purposes other than source identification." *Samara Bros.*, 529 U.S. at 213, 120 S.Ct. 1339.

Defendants argue that Malaco's Swedish Fish product design is not entitled to protection because it is a generic, common design that is used extensively by third parties in the confectionery industry. (Def.'s Br. at 4.) This Court agrees that the generic design of Malaco's Swedish Fish, along with extensive third party use of the design and Malaco's failure to police infringing third-party uses, renders the Swedish Fish design generic and unprotectable.

---

**4.** Prior to the codification of the functionality element by the Trademark Amendments Act of 1999, 5 Pub.L. 106–43 (August 5, 1999), this element was an affirmative defense in the Second Circuit. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir.2001) (citing *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir.1995)). The Act, however, expressly states that the party seeking trade dress protection has the burden of showing its trade dress is non-functional. 15 U.S.C. § 1125(a)(3) (2003).

## 1. *Generic Shape & Third Party Use*

■ It is axiomatic that generic product designs are not entitled to trade dress protection under the Lanham Act, and that "even a showing of secondary meaning is insufficient to protect product designs that are overbroad or generic." *Yurman,* 262 F.3d at 115; *see, e.g., Fun–Damental Too,* 111 F.3d at 1000 ("A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected."); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.,* 280 F.3d 619, 638 (6th Cir.2002) (finding generic product configurations unprotectable despite secondary meaning evidence because "no designer should have a monopoly on designs regarded by the public as the basic form of a particular item"); *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.,* 205 F.3d 137, 142 (4th Cir.2000) ("Trade dress should be considered generic if well-known or common ... or a common basic shape or design").

The fish-shaped animal design of the Swedish Fish is a classic example of a design that is not used to identify source, but rather to render the product itself more appealing, especially to children. *See Samara Bros.,* 529 U.S. at 213, 120 S.Ct. 1339 (noting that "even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing").

Notably, animal-shaped gummy candy is common in the candy industry. Indeed, representatives of Jaret, Malaco's licensee of the Swedish Fish, acknowledged that other animal-shaped gummy candy, including gummy bears, gummy worms and gummy dinosaurs, are generic candy products that have been marketed by several companies for several years, (Sullivan Dep.

at 91–93, 96–102; Jaret Dep. at 87–89; Galatolie Dep. at 49–54, 98–102.) Additionally, fish-shaped candies were among the top four shapes sold in the gummy industry in the late 1990s. (Deposition of David Douglas, dated March 12, 2002 ("Douglas Dep.") at 16, 127–28.) Malaco has presented no evidence that a gummy fish-shaped design is distinguished in any way from other, admittedly generic, gummy animal designs.

The undisputed evidence also unquestionably shows that the Swedish Fish configuration is used extensively throughout the confectionery industry by third parties. Defendants have provided the Court with voluminous evidence showing that numerous third-party manufacturers and distributors in the industry have sold gummy fish-shaped candy that is virtually indistinguishable from Malaco's Swedish Fish. (*See, e.g.,* Def.'s Ex. C, Def.'s 56.1 Stmt. ¶¶ 52–77.) Specifically, defendants provide examples of sixty-nine (69) third-party uses of gummy fish-shaped designs. (Def.'s Ex. C.) This evidence of extensive third-party use supports a finding that the Swedish Fish design is generic. *See Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.,* 65 F.3d 1063, 1070 (2d Cir.1995) (affirming summary judgment where product design of black compacts for cosmetics was generic due to widespread third-party use in the industry).

■ Additionally, Malaco's failure to police its trade dress for decades is further evidence that the Swedish Fish trade dress is weak and has not acquired distinctiveness. *See BellSouth Corp. v. DataNational Corp.,* 60 F.3d 1565, 1569–70 (Fed.Cir. 1995); *Brandwynne v. Combe Int'l., Ltd.,* 74 F.Supp.2d 364, 381 (S.D.N.Y.1999). A product design trade dress may become generic, meaning commonly used and not entitled to protection, "as a result of the trademark owner's failure to police [it]

..., so that widespread usage by competitors leads to generic usage among the relevant public, who see many sellers using the same [product design]." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 12:1, 17:8, 17:17 (4th ed.2003). Although Malaco need not police every potential infringing third-party use, its complete failure to police the product design is evidence of a generic product configuration trade dress. *See BellSouth*, 60 F.3d at 1569–70; *Brandwynne*, 74 F.Supp.2d at 381; 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 12:1, 17:8, 17:17 (4th ed.2003).

Despite Malaco's and Jaret's awareness for decades of competitive third-party gummy fish-shaped candies in the market, they failed to take action against those alleged infringers.[5] It is undisputed that Malaco attempted to enforce its rights against a third parties only twice, and both cease and desist letters concerned the protection of Malaco's trademarks, not its product configuration trade dress. (Pl.'s Ex. 22 & 23; Def.'s Ex. LLL.) In light of the rampant third-party use in the market, Malaco's attempt at policing its trademark, and not even its trade dress, is wholly insufficient to sustain its claim that its product design is non-generic. Further, Malaco's contention that it "has chosen to police against many alleged infringers by

taking appropriate business steps ... includ[ing] embossing the word SWEDISH onto its product and emphasizing in the advertising this means of identifying the quality of SWEDISH FISH gummy candy" is insufficient to rebut the substantial undisputed evidence of Malaco's failure to police its product design. (Plaintiff's Memorandum of Law in Opposition to Summary Judgment, dated September 18, 2002 ("Pl.'s Opp.") at 31–32.) A business decision to emboss a name on a product is not evidence of an attempt by that party to police its product design against third-party use. Indeed, the two types of action are completely unrelated.

Since Malaco's Swedish Fish design is weak and unprotectable due to its generic shape and extensive third-party use, it cannot sustain its product configuration infringement claim.

#### 2. *Functional Design*

 Even if Malaco could prove that its product design was not generic and entitled to protection, Malaco would additionally bear the burden of proving that its product configuration is non-functional. *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001); 15 U.S.C. § 1125(a)(3) (2003). "[A] product feature is functional, and cannot serve as a trademark, if it is essential to the use or pur-

---

5. *See, e.g.*, Jaret Dep. at 21–22, 24–32; Galatolie Dep. at 26–32 (knowledge of juju fish marketed by Henry Heide Candy Company); Galatolie Dep. at 7–8, 10, 25–26, 34–41, 194–99; Sullivan Dep. at 71–76, Kling Dep. at 42–49, Def.'s Ex. KKK (knowledge of similar fish candy manufactured by Farley); Jaret Dep. at 56–59, Galatolie Dep. at 59–63, Babiarz Dep. at 70–72, 129–30 (knowledge of "Nordic Fish" marketed by Dae Julie); Galatolie Dep. at 214–18, Johansson Dep. at 81–83, Sullivan Dep. at 110, Def.'s Ex. C at 52–53 (knowledge of CVS store-brand label of gummy fish, where CVS is, and continues to be, a signifi-

cant customer of plaintiff's Swedish Fish); McEldowney Dep. at 219–21 (knowledge that rebaggers who sell Swedish Fish also sell similar gummy fish-shaped candy manufactured by third parties); Kling Dep. at 39–41, 52–54, Galatolie Dep. at 25–26, 65, 72–74, Def.'s Exs. C at 10, DDD, KKK, MMM (knowledge of similar gummy fish-shaped candy manufactured by Harmony Foods, Gimbal Brothers and knowledge of Snak Club's "Yuppie Guppies" gummy fish-shaped candy); Johansson Dep. at 66–88, 244–63, 321–23, 330 (other third-party use).

pose of the article or if it affects the cost or quality of the article." *TrafFix Devices*, 532 U.S. at 32, 121 S.Ct. 1255 (2001) (quotations omitted). "Expanding upon the meaning of this phrase, [the Supreme Court has] observed that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices*, 532 U.S. at 32, 121 S.Ct. 1255 (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (alteration in original)); *accord Yurman*, 262 F.3d at 116. Thus, as it relates to both utilitarian and aesthetic aspects of a product, the functionality doctrine forbids granting Lanham Act protection to "non-reputation-related product features" where doing so will inhibit competition. *Qualitex*, 514 U.S. at 165, 169–70, 115 S.Ct. 1300; *accord Landscape Forms*, 113 F.3d at 377.

■■■■■ The purpose behind the functionality doctrine is to "prevent[ ] trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex*, 514 U.S. at 164, 115 S.Ct. 1300. The legal tenet that "the nonfunctionality requirement 'protects competition even at the cost of potential consumer confusion,'" is "even more critical" in a product configuration case "because monopoly right in the design of the product itself is more likely to preclude competition." *Yurman*, 262 F.3d at 116 (quoting *Landscape Forms*, 113 F.3d at 379–80). Consequently, " '[r]igorous application' of the requirement of nonfunctionality is necessary" in trade dress claims based on product design. *Yurman*, 262 F.3d at 116 (alteration in original) (quoting *Restatement (Third) of Unfair Competition*, § 16 cmt. b at 158).

The undisputed evidence shows that Malaco's Swedish Fish product configuration is a functional design that is not entitled to protection under the Lanham Act. First, Malaco notably fails to provide this Court with any evidence concerning non-functionality. (Pl.'s Opp. at 33.) Second, it is evident that affording protection to a common, fish-shaped candy design would eliminate competition in this product category, where numerous third parties already compete—something which the functionality requirement is designed to prohibit. *See TrafFix Devices*, 532 U.S. at 29, 121 S.Ct. 1255; *Two Pesos*, 505 U.S. at 775, 112 S.Ct. 2753; *Qualitex*, 514 U.S. at 164–65, 115 S.Ct. 1300; *see also Henri Bendel, Inc. v. Sears, Roebuck & Co.*, 25 F.Supp.2d 198, 201–02 (S.D.N.Y.1998) (granting summary judgment where plaintiff's handbag design was functional). Granting protection to Malaco's product design would unjustifiably "deprive competitors of alternative designs and, thus, foreclose competition from the relevant market." *Landscape Forms*, 113 F.3d at 377; *accord TrafFix Devices*, 532 U.S. at 29, 121 S.Ct. 1255; *Qualitex*, 514 U.S. at 164–65, 115 S.Ct. 1300.

Malaco describes the configuration of the Swedish Fish as "a fish-shape having a distinct head and tail," with "a molded eye and scales throughout [the] top," and having a "flat back." (Compl.¶ 10.) The "flat back" is a functional result of the manufacturing process, whereby the liquid is poured into a starch impression that always creates a product with one flat side. (Deposition of Sal Ferrara, dated March 5, 2002 ("Ferrara Dep.") at 325–26; Deposition of Roger L. McEldowney, dated March 6, 2002 ("McEldowney Dep.") at 17.) Additionally, the other product design features such as the head, tail, scale pattern and eye are necessary attributes to portray any fish. Notably, nearly every third party marketing gummy fish-shaped

candy portrays identical features. (Def.'s Ex. C.) Therefore, since Malaco's product design trade dress "involv[es] an aesthetic feature, the dress is ... functional [since] the right to use it exclusively 'would put competitors at a significant non-reputation-related disadvantage.'" *Yurman*, 262 F.3d at 116 (quoting *TrafFix Devices*, 532 U.S. at 32, 121 S.Ct. 1255).

■ Finally, although Malaco has recently attempted to differentiate its product by imprinting the word "SWEDISH" on the body of the Swedish Fish, "[t]he Lanham Act ... does not protect trade dress in a functional design simply because an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller." *TrafFix Devices*, 532 U.S. at 34–35, 121 S.Ct. 1255.

Therefore, as Malaco's SWEDISH FISH product design trade dress is generic and functional, defendants are entitled to summary judgment on Malaco's protect configuration trade dress infringement claim.

### B. *Federal and State Dilution*

■ Additionally, for the reasons set forth above, Malaco cannot show that its Swedish Fish product design is entitled to protection under federal or state dilution law. First, the Federal Trademark Dilution Act (the "FTDA"), 15 U.S.C. § 1125(c) (2003), "only affords protection to inherently distinctive marks ... [not] to descriptive marks that have acquired distinctiveness." *Christopher D. Smithers Foundation, Inc. v. St. Luke's–Roosevelt Hosp. Ctr.*, 00 Civ. 5502(WHP), 2003 WL 115234, at *7 (S.D.N.Y. Jan. 13, 2003); *accord New York Stock Exchange, Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 556 (2d Cir.2002); *TCPIP Holding Co. v. Haar Communications Inc.*, 244 F.3d 88, 98 (2d Cir.2001). Thus, since a product configuration trade dress can never be inherently distinctive, Malaco's Swedish Fish trade dress is not entitled to protection under the FTDA. *Samara Bros.*, 529 U.S. at 212, 120 S.Ct. 1339; *Yurman*, 262 F.3d at 115–16. Therefore, defendants are entitled to summary judgment on Malaco's product configuration trade dress dilution claim under the FTDA.

■ Defendants also argue that Malaco's Swedish Fish product configuration is too weak to warrant protection under New York's anti-dilution law. (Def.'s Br. at 13.) New York's anti-dilution law only protects "extremely strong marks." *BigStar Entertainment, Inc. v. Next Big Star, Inc.*, 105 F.Supp.2d 185, 218 (S.D.N.Y.2000). As noted above, Malaco's product configuration is descriptive and weak because of extensive third party use of the design. As such, it is not entitled to protection under New York's anti-dilution law, and defendants' motion for summary judgment is granted on this claim as well. *See BigStar Entertainment*, 105 F.Supp.2d at 218 (affirming dismissal of New York state dilution claim where mark was weak due to extensive third-party use); 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:108 (4th ed.2003) (product configurations are not entitled to protection where they are "already so diluted, weak and commonplace that there is no distinctive quality left to dilute by others.").

### IV. *TRADEMARK and TRADE DRESS INFRINGEMENT*

■ Malaco also claims that the defendants infringed its unregistered and federally registered trademarks in violation of Sections 43(a) and 32 of the Lanham Act, respectively. (Compl.¶¶ 73–89.) Malaco argues that defendants' use of its mark FAMOUS SQWISH CANDY FISH

is confusingly similar to its unregistered mark, THE ORIGINAL SWEDISH FISH,[6] and its federally registered mark, SWEDISH FISH (collectively, the "Marks"). (Compl. at ¶¶ 73–89.) Additionally, Malaco claims that defendants are infringing its unregistered trade dress in the packaging of its Swedish Fish product pursuant to Section 43(a) of the Lanham Act. (Compl.¶¶ 60–66.)

In order to succeed on its federal trademark and trade dress infringement claims, Malaco must show that: (1) its Marks and trade dress are entitled to protection under the Lanham Act; and (2) defendants' use of its FAMOUS SQWISH CANDY FISH mark and packaging trade dress is likely to cause confusion with its Marks and packaging trade dress, respectively. *See* 15 U.S.C. §§ 1114(1), 1125(a)(1)(A); *Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137–38 (2d Cir.1999). Additionally, in a trade dress infringement action, the plaintiff bears the burden of proving that its trade dress is non-functional. 15 U.S.C. § 1125(a)(3) (2003). Even assuming, *arguendo*, that Malaco's Marks and trade dress are protectable under the Lanham Act,[7] summary judgment is warranted because Malaco cannot show a likelihood of confusion between the parties' trademarks or their packaging trade dress.

### A. Likelihood of Confusion

In the Second Circuit, courts consider the well-known *Polaroid* factors as a framework for evaluating whether there is a likelihood of confusion. *See Polaroid Corp. v. Polarad Elec. Corp.*, 287 F.2d 492, 495 (2d Cir.1961). Those factors are:

1) the strength of the prior owner's mark; 2) the similarity between the two marks; 3) the competitive proximity of the products; 4) the likelihood that the prior user will bridge the gap; 5) actual confusion; 6) the defendant's good faith; 7) the quality of defendant's product; and 8) the sophistication of the buyers.

*Polaroid*, 287 F.2d at 495. No single factor is dispositive, and each factor should be weighed in the context of others to determine if a likelihood of confusion exists. *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993); *Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 580 (2d Cir.1991).

### 1. Strength of Mark

The "strength" of a mark is a measure of a mark's distinctiveness, *i.e.*, the mark's " 'tendency to identify the goods [or services] sold under the mark as emanating from a particular, although possibly anonymous, source.' " *Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996) (quoting *McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir.1979)) (alteration in

---

6. Malaco filed an application with the United States Patent and Trademark Office ("USPTO") for the mark, THE ORIGINAL SWEDISH FISH, in December 2000, but later abandoned that application on August 21, 2002.

7. This Court notes that Malaco's federally SWEDISH FISH Mark is considered incontestable by the USPTO. While an incontestable mark is entitled to a presumption of protectability, that presumption may be overcome through a showing of no likelihood of confusion. *Gruner + Jahr USA Publ'g v.*

*Meredith Corp.*, 991 F.2d 1072, 1076, 1078 (2d Cir.1993) (finding incontestable mark's entitlement to protection overcome by an absence of likelihood of confusion and noting that despite incontestability, mark was weak). Acknowledging Malaco's incontestable status for its SWEDISH FISH Mark, this Court finds that the presumption of incontestability for that mark is overcome due to the absence of any likelihood of confusion between the parties' marks. *See infra*, Section IV.A.

original); *accord Lang,* 949 F.2d at 581. The law accords strong trademarks a high degree of protection against infringement. *See TCPIP Holding Co. v. Haar Communications Inc.,* 244 F.3d 88, 100 (2d Cir. 2001); *Nikon,* 987 F.2d at 94.

■ The inquiry into the strength of a mark or trade dress focuses on two factors: (i) the mark's or trade dress' inherent distinctiveness (*i.e.,* whether it is generic, descriptive, suggestive, arbitrary, or fanciful); and (ii) its acquired distinctiveness, or strength in the marketplace. *Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 118 (2d Cir.1999); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976); *General Cigar Co. v. G.D.M. Inc.,* 988 F.Supp. 647, 663 (S.D.N.Y.1997). Here, neither Malaco's Marks or trade dress has inherent or acquired distinctiveness.

a. *Trademark*

■ It is undisputed that the dominant part of Malaco's Marks is the term "Swedish Fish." The term "Swedish Fish," as used in Malaco's Marks is descriptive because it merely describes the shape of the product, a fish, and the geographical origin of the product, Sweden. *See Samara Bros.,* 529 U.S. at 213, 120 S.Ct. 1339 (noting that terms descriptive of geographic origin, such as "Georgia Peach" cannot be inherently distinctive); 1, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* §§ 3.1, 11:1, 14:6.1, 14.29 (4th ed.2003). Malaco argues, however, that its Marks have acquired distinctiveness in the marketplace because (i) the term "SWEDISH FISH" has been used in connection with the sale of Malaco's product for decades; (ii) its sales of Swedish Fish in the United States totaled approximately $100 million over the last 3 years; and (iii) the annual marketing budget for Swedish Fish was approximately $7 million

in 2001. (Pl.'s Opp. at 8; Pl.'s Ex. 46; Deposition of Douglas Kling, dated Apr. 11, 2002 ("Kling Dep.") at 123.) Additionally, Malaco contends that its SWEDISH FISH mark has secondary meaning due its status as an incontestable mark.

However, defendants assert, and this Court agrees, that this secondary meaning evidence does not correlate to the strength of Malaco's Marks. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 15:47 (4th ed.2003) (noting significant product sales "may be due to dozens of factors, only one of which may be the drawing power of the trademark"); *see also Gruner + Jahr,* 991 F.2d at 1078 (affirming summary judgment and finding mark weak in likelihood of confusion analysis despite mark's incontestable status) (citing 15 U.S.C. § 1125); *Citigroup Inc. v. City Holding Co.,* 171 F.Supp.2d 333, 347–51 (S.D.N.Y.2001) (finding no likelihood of confusion despite 22 incontestable marks in a family of marks, due in part to third-party use of marks). Indeed, a portion of Malaco's Swedish Fish sales is derived from Swedish Fish that are rebagged by distributors and sold to consumers in the marketplace under a different name and in different packaging. (Def.'s Ex. D.) Malaco also allows private labeling of its Swedish Fish product under other companies' names such as "Market Basket Assorted Swedish Red Fish," "Marlow Swedish Fish," "Fordy's Red Swedish Fish," "Newton's Mini Red Swedish Fish" and "Market Classics Swedish Fish." (Def.'s Ex. D.) Further, some of Malaco's Swedish Fish sales are derived from bulk sales, where there is no association with the Marks, and a portion of its revenue is attributable to sales of Swedish Fish that it repackages under the names "Jaret Fish," or "Red Fish," for example. (Def.'s Ex. D.) Moreover, Malaco was aware of the risk of selling its

goods through rebagging since Malaco's licensee, Jaret, warned Malaco that the rebaggers' activities were "detrimental to the trademark as it (among other things) put[s] the trademark at a risk of genericism." (Def.'s Ex. DD at M00209.) This evidence, showing that a portion of Malaco's revenue is derived from sales not associated with its Marks, is sufficient to rebut Malaco's secondary meaning evidence. *See Gruner + Jahr*, 991 F.2d at 1078 (finding presumption of distinctiveness lessened by the fact that the mark is extensively used in the public domain); *Lang*, 949 F.2d at 581 (finding mark had not acquired distinctiveness due to extensive third-party use).

Malaco's contention that its Marks are entitled to a finding of acquired distinctiveness is further belied by its own internal marketing reports, including one dated a day before it filed this complaint, reporting that "[m]ost respondents consider 'Swedish Fish' a generic term of fish-shaped gummi candy," and that its Marks enjoy "weak trademark protection." (Def.'s Exs. HH at 9, OO at M00492.) This internal research is telling, and further confirms this Court's finding that the Marks are not strong and have not acquired distinctiveness. Accordingly, this Court concludes that Malaco's Marks are merely descriptive and weak.

b. *Trade Dress*

This Court finds that Malaco's packaging trade dress is weak as well. It is undisputed that for several decades prior to 1997, Swedish Fish were sold in a wide array of packaging, each with a different overall look and feel. (Jaret Dep. at 34–37, 74–81; Galatolie Dep. at 148–52, 164–65, 176–83; Def.'s Ex. E.) Additionally, in 1996, approximately "70% of the Swedish Fish product sold in the U.S. market [was] sold as bulk or unwrapped," with no asso-ciation to Malaco's trade dress. (Def.'s Ex. CC at 00061; Jaret Dep. at 42–46; Sullivan Dep. at 178–81, 183–84.) Indeed, in its opposition, Malaco does not refute evidence that it used multiple packaging trade dresses for its Swedish Fish, but rather briefly notes that it began using its current packaging consistently since 1997, arguing that "[t]he overall SWEDISH FISH gummy candy line has a definable look and feel that is clearly apparent." (Pl.'s Opp. at 19.) Malaco attempted to create a uniform packaging project in 1997, recognizing that it used "[m]ultiple packaging designs with different colour schemes, graphic representations, logo treatments, legal lines, type styles and tag lines." (Def's Ex. CC at 00056.) Even after implementing that "uniformity" policy, however, Malaco still employed two distinct packaging trade dresses for its Swedish Fish product, one with a predominantly yellow background and the other with a white one. (Def.'s Ex. A.) Even Malaco's representatives acknowledge that each of Malaco's packages looks different. (Sullivan Dep. at 263–66; Deposition of Magnus Johansson, dated Feb. 13, 2002 ("Johansson Dep.") at 183–84.)

Further contributing to a finding that Malaco's packaging trade dress is weak is that Malaco allows private labeling of its Swedish Fish product under other companies' names, as described above, and under different packaging designs. (Def.'s Exs. C at 20–21, 58, D, GG; Johansson Dep. at 108–15, 119–24, 264–65; McEldowney Dep. at 29.) Indeed, one of Malaco's representatives testified that 40% of Swedish Fish sales are not sold in the packaging for which Malaco claims protection. (Sullivan Dep. at 174–75.) Malaco's private labeling practice is strong evidence that Malaco's trade dress packaging is weak, as the public will be more likely to identify the product and the SWEDISH FISH mark and trade dress with sources other than Mala-

co. *See, e.g., Nora Beverages, Inc. v. Perrier Group of Am.*, 269 F.3d 114, 123 (2d Cir.2001) (affirming summary judgment where trade dress weakened by plaintiff's practice of permitting third party sales of its bottle design); *Versa Prods. v. Bifold Co.*, 50 F.3d 189, 216 (3d Cir.1995) (private labeling undermines mark "because consumers will be less likely to associate the multifariously labeled product with a single source"); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 977 F.Supp. 264, 268 (S.D.N.Y.1997) (same), *aff'd* 152 F.3d 948, 1998 WL 169251 (Fed.Cir.1998); *Century Time Ltd. v. Interchron Ltd.*, 729 F.Supp. 366, 368 n. 2 (S.D.N.Y.1990) (same); *see also Regal Jewelry Co. v. Kingsbridge Int'l, Inc.*, 999 F.Supp. 477, 486–90 (S.D.N.Y.1998) (holding that deviations from claimed trade dress prevented plaintiff from establishing acquired distinctiveness). Accordingly, due to Malaco's use of multiple packaging designs and its private labeling practice, this Court finds that Malaco's packaging trade dress is weak.

Therefore, as both Malaco's trademarks and packaging trade dress are weak, the "strength of the mark" factor weighs in defendants' favor.

### 2. *Similarity of Marks*

▮ In examining similarity, courts consider the general, overall impression created by the marks and trade dress, including their presentation in the marketplace as well as, in the case of trademarks, their typewritten similarity. *Morningside Group Ltd. v. Morningside Capital Group L.L.C.*, 182 F.3d 133, 140 (2d Cir.1999).

### a. *Trademarks*

Defendant's mark, FAMOUS SQWISH CANDY FISH, and Malaco's Marks, THE ORIGINAL SWEDISH FISH and SWEDISH FISH, are not visually or aur-ally similar. First, the only term that the marks actually share is "FISH," which the parties agree is "generic for a fish-type candy." (Johansson Dep. at 92.) Additionally, most competitors who market fish-shaped gummy candy use the term "Fish" in their names or on their packaging. (Def.'s Ex. C (Nordic Fish, Sweet's Fish, Original Red Fish, Mini Red Fish, Jelly Fish).) It is well-established that shared use of a generic term, such as "Fish," to describe a product is insufficient to establish confusing similarity. *Gruner + Jahr*, 991 F.2d at 1077–78 (finding no likelihood of confusion where defendants "use[d] a descriptive or weak portion of [plaintiff's] mark"); *Beech–Nut, Inc. v. Warner–Lambert Co.*, 480 F.2d 801, 803 (2d Cir.1973) (BREATH SAVERS not confusingly similar to BREATH PLEASERS where BREATH was a generic term for breath mints and was used extensively in the candy and mint industry).

▮ Second, the remaining terms in the parties' marks are too weak or dissimilar to create actionable similarity. For example, the terms "Original" and "Famous" on candy and food products are used frequently in marketing, and are thus weak. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 7.23, 11:17 (4th ed.2003) (it is "close to impossible" for common advertising slogans to achieve trademark significance). Moreover, self-laudatory terms such as "Original" and "Famous" are usually not entitled to protection. *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341–42 (Fed.Cir.2001); *In re Boston Beer Co.*, 198 F.3d 1370, 1373–74 (Fed.Cir.1999); 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 7.23, 11:17 (4th ed.2003). Even the dominant portions of the marks, SWEDISH and SQWISH, are completely different in both appearance and sound. For example, as

noted, the term "Swedish" in Malaco's Marks is descriptive in depicting the geographical origin of the product. *See Samara Bros.*, 529 U.S. at 213, 120 S.Ct. 1339; 1, 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §§ 3.1, 11:1, 14:6.1, 14.29 (4th ed.2003). In contrast, the term SQWISH is a coined phrase, suggestive of the texture of the product. Since a comparison of the parties' marks as a whole, as well as their dominant terms, show dissimilarity, and since the only shared term, "Fish," is generic and commonplace, this factor weighs against a finding of likelihood of confusion. *See Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 46 (2d Cir.2000) (no similarity between DENTYNE ICE and ICE BREAKERS); *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116–18 (2d Cir.1984) (no similarity between DONKEY KONG and KING KONG); *Int'l Data Group, Inc. v. J & R Electronics, Inc.*, 798 F.Supp. 135, 139 (S.D.N.Y.) (COMPUTERWORLD not confusingly similar to J & R COMPUTER WORLD), *aff'd*, 968 F.2d 499, 1992 WL 406398 (2d Cir.1992).

Malaco also claims the "similarity" factor weighs in its favor because the parties' marks are aurally similar. In support of that contention, Malaco submits the testimony and expert report of Professor David Yerkes, a linguistics expert. (Def.'s Ex. OOO.) Malaco requested Professor Yerkes to determine whether the terms "SWEDISH FISH" and "SQWISH FISH" (the "given terms") are aurally similar. (Deposition of David Yerkes, dated June 7, 2002 ("Yerkes Dep.") at 155–58.) Notably, Malaco's counsel never gave Professor Yerkes the parties' marks to review as a whole. (Yerkes Dep. at 155–58.) Professor Yerkes found that the given terms were linguistically similar and likely to be confused, based in large part on the placement of the "ISH" sound directly before the word "FISH" in both given terms. (Def.'s Ex. OOO; Yerkes Dep. at 160–61.) Malaco's mark, however, is FAMOUS SQWISH CANDY FISH, not SQWISH FISH. Indeed, when asked at his deposition to compare the parties' marks as a whole, Professor Yerkes acknowledged that confusion was less likely. (Yerkes Dep. at 159–62, 167–169.) Accordingly, as Professor Yerkes' findings regarding aural similarity are not based on a comparison of the parties' marks as a whole, and since consumers in the marketplace actually hear and view the terms as a whole rather than in a piecemeal fashion, this Court finds that Professor Yerkes' expert testimony does not create a material issue of disputed fact. *See Universal City Studios*, 746 F.2d at 117 ("[J]uxtaposing fragments of each mark does not demonstrate whether the marks as a whole are confusingly similar"); *Citigroup*, 171 F.Supp.2d at 345, 349 (finding CITY and CITI prefixed marks dissimilar where their "aural identity [was] overcome by written differentiation").

### b. *Trade Dress*

"[I]n a trade dress infringement case[,] the question is not how many points of similarity exist between the two packages but whether the two trade dresses create the same general overall impression." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir.1992). A comparison of the parties' packaging leads to the overall impression that the packages are dissimilar. (*Compare* Def.'s Ex. A (Malaco's packaging) *with* Def.'s Ex. B (Defendants' packaging).) First, the background of the parties' packaging is dissimilar—Malaco uses a yellow and blue or a white and blue background, whereas defendants consistently use only a blue background on all their packaging. (Def.'s Exs. A & B.)

Further, defendants' packaging has a large cartoon fish on the front, with the cartoon's name, "S.Q. Wish,"[8] under it. (Def.'s Ex. B.) Defendants' placement of the term "SQWISH" on the packaging diagonally across approximately three-quarters of the front of the package, and its depiction of the term in bolded red lettering and dark blue shadowing, giving the letters a three dimensional feel, differentiates it from Malaco's packaging. While Malaco also uses large red lettering for the term "SWEDISH FISH," it does not use shadowing for its letters and its lettering always appears straight across the front of the package. *See Life Indus. Corp. v. Star Brite Distrib., Inc.*, 31 F.3d 42, 46–47 (2d Cir.1994) (vacating district court injunction where packaging for competing products conveyed a dissimilar overall appearance, even though they shared a "yellow or white background, large red (or white on red) block print for the product name and a black field containing white print at the top edge."); *Bristol–Myers Squibb*, 973 F.2d at 1037, 1045–46 (finding packaging trade dress dissimilar, despite shared use of color scheme, in light of the prominence of each party's trade name on the packages).

▮ Finally, Malaco argues that both packages are similar because they are composed of cellophane and have a clear window on the front of the package, allowing the consumer to see the product. (Pl.'s Opp. at 20.) "Use of . . . a common type of functional packaging [such as cellophane, however,] cannot give rise to a suit for trademark or trade dress infringement or unfair competition." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 7:63, 8:20 (4th ed. 2003) ("The use of ordinary packaging such as transparent cellophane is function-

al and free for all to use") (citing cases); *accord TrafFix Devices*, 532 U.S. at 32–33, 121 S.Ct. 1255; *Qualitex*, 514 U.S. at 165, 115 S.Ct. 1300. The variations between the parties' packages combine to create an overall look and feel that distinguishes the trade dresses.

Accordingly, as the parties' trademarks and packaging trade dress are dissimilar, this factor weighs in defendants' favor. *See, e.g., Nabisco*, 220 F.3d at 46 (affirming summary judgment due to dissimilarity of marks alone); *Resource Developers, Inc. v. Statute of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) (same); *Universal City Studios*, 746 F.2d at 116 (same).

### 3. *Proximity of Products*

▮ The proximity of products factor "focuses on whether the products compete." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 95 (2d Cir.1993). Likelihood of confusion is greater where the products compete in the same category or are used for similar purposes. *Nikon*, 987 F.2d at 95 (citing *Lang*, 949 F.2d at 582). While the parties compete in the gummy candy industry, it is undisputed that the parties sell their products to different sectors of the candy market and through different retailers. Defendants sell their FAMOUS SQWISH CANDY FISH only in niche sectors, such as the movie theater, fundraising and video store markets (Declaration of Michael Rosenberg, dated Aug. 14, 2002 ("Rosenberg Decl.") ¶¶ 26–27), while Malaco admittedly has little, if any, presence there. (Pl.'s 56.1 Stmt. ¶¶ 13 ("SWEDISH FISH does not make fund raiser bags"), 24 ("The theater market, at present is a very small segment of the overall distribution of SWEDISH FISH").) Indeed, even one of

---

**8.** Defendants' S.Q. Wish cartoon character is used consistently in conjunction with the promotion of Famous Sqwish Candy Fish product.

Malaco's experts concludes that the parties' products "are unlikely to be encountered by consumers on a side-by-side basis." (Def.'s Ex. QQQ at 8; Deposition of Eric Biben, dated April 24, 2002 ("Biben Dep.") at 26–27; Rosenberg Decl. ¶¶ 26–27.) Additionally, while certain distributors carry both parties' products, those distributors typically do not sell both parties' products to the same customers. (Biben Dep. at 26–27; Deposition of Adam Gottlieb, dated Apr. 10, 2002 ("Gottlieb Dep.") at 33; Deposition of Brad Knepprath, dated Apr. 17, 2002 ("Knepprath Dep.") at 56–57; Rosenberg Decl. ¶¶ 26–27.) Accordingly, as the parties compete in different sectors of the candy industry, this factor tips slightly in defendants' favor.

### 4. Bridging the Gap

■ "Bridging the Gap" refers to whether the senior user is likely to enter the junior user's market. *Morningside Group Ltd.*, 182 F.3d at 141. This factor recognizes " 'the senior user's interest in preserving avenues of expansion and entering into related fields.' " *Morningside Group Ltd.*, 182 F.3d at 141 (quotation omitted). Bridging the gap favors a finding of infringement where the parties are already in the same business. *Nikon Inc.*, 987 F.2d at 95. Since the parties do not address this factor, this Court considers it to be neutral.

### 5. Actual Confusion

■ It is undisputed that Malaco has not identified any instances of actual confusion between defendants' FAMOUS SQWISH CANDY FISH and Malaco's SWEDISH FISH Marks or packaging. (*See, e.g.*, Rosenberg Decl. at ¶ 45; Johansson Dep. at 54; Sullivan Dep. at 287; Kling Dep. at 155–56; Galatolie Dep. at 194.) Although the Lanham Act does not require Malaco to show evidence of actual confusion to establish a likelihood of confusion, the fact that the parties have had substantial sales without a single instance of confusion is an indicator of the absence of likelihood of confusion. *See Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1006 (2d Cir.1983); *Lever Bros. Co. v. Am. Bakeries Co.*, 693 F.2d 251, 258 (2d Cir. 1982). A party may compensate for the absence of actual confusion evidence through credible survey evidence that raises an inference of actual confusion in the marketplace. *Nikon*, 987 F.2d at 95–96. Here, the absence of actual confusion evidence, or of survey evidence showing a likelihood of confusion, dictates that this factor be resolved in defendants' favor.

#### a. Actual Confusion Between Parties' Marks

In lieu of submitting actual confusion evidence, Malaco submits a survey conducted by the Admar Group (the "Admar Survey") that, it alleges, shows a likelihood of confusion between the parties' marks. (Def.'s Ex. QQQ.) The section of the Admar Survey concerning trademark similarity, however, reports that only one percent of the respondents were confused by any similarity between the parties' marks. (Def.'s Ex. QQQ at 3, 13.) This one percent response is insufficient to sustain an inference of actual confusion. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32:188–89 (4th ed.2003). Indeed, this Court finds that such a low finding of similarity is, instead, affirmative evidence that there is no likelihood of confusion between the parties' marks. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 32:188–89 (4th ed. 2003) ("When the percentage results of a confusion survey dip below 10 percent, they can become evidence which will indicate that confusion is not likely.").

#### b. *Actual Confusion Between Parties' Packaging*

The Admar Survey also tested for consumer confusion in the marketplace regarding the parties' packaging trade dress. (Def.'s Ex. QQQ.) In support of its contention that consumers are likely to confuse the parties' packaging, Malaco cites to the Admar Survey's conclusion that 18% of respondents were confused as to the source of defendants' packaging. (Pl.'s Opp. at 22–23, 26; Def.'s Ex. QQQ.) Malaco's characterization of the survey's results is misleading, at best. The Admar Survey states in its findings that "18% of the potential purchasers of a fruit-flavored chewy candy believed that the Famous Sqwish candy was 'put out' or made by the same company as Original Swedish Fish candy or that it required the approval or permission from Original Swedish Fish Candy." (Def.'s Ex. QQQ at 3, 11.) However, Admar Group's description of the survey results goes on to conclude that, "[i]n total," only "10% of the respondents said that the similarity of [the parties'] packages was the basis for their belief that the Famous Sqwish candy was 'put out' or made by the same company as Original Swedish Fish candy or that it had obtained an approval or permission from Original Swedish Fish." (Def.'s Ex. QQQ at 3, 11, 12.) Further, the survey attributed the balance of the reported confusion (8%) to other indicia of confusion which are irrelevant to this Court's trade dress analysis, including, *inter alia*, consumers' belief that both products are the "same type of candy." (Def.'s Ex. QQQ at 3.)

Indeed, this Court notes that the distilled conclusion of a 10% consumer confusion over packaging overstates the point since the underlying data show only a 9.5% confusion level which was rounded upward by Malaco's expert to 10%. (Def.'s Ex. QQQ; Expert Report of George Mantis, dated May 21, 2002 ("Mantis Rep.") ¶ 19.) Even assuming that the Admar Survey was conducted within the bounds of acceptable testing methodology,[9] the survey's report that only 9.5% of respondents expressed confusion over the parties' packaging trade dress is too low to sustain Malaco's contention of actual confusion. *See* 5 J. Thomas McCarty, *McCarthy on Trademarks and Unfair Competition*, § 32:189 (4th ed.2003) (noting that survey's confusion figures below 20% are "problematic," unless accompanied by other evidence of confusion and that responses below 10% "can become evidence which will indicate that confusion is not likely"); *see also Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp 2d 305, 320–24 (S.D.N.Y.), *aff'd* 234 F.3d 1262, 2000 WL 1721126 (2d Cir. 2002) (survey results reporting 14.5% and 5% levels of confusion insufficient); *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1274 (S.D.N.Y.1990) (survey results reporting 9.2% confusion insufficient).

Finally, Malaco seeks to use a pilot survey conducted on its behalf by the Admar Group in May 2002 (the "Pilot Survey"), in support of its argument that consumers "were likely to be confused between SWEDISH FISH gummy candy and SQWISH gummy candy." (Pl. Opp. at 26–27; Pl.'s Ex. 51.) Although the Pilot Survey fell within the scope of defendants' May 22, 2002 subpoena on the Admar Group, it is undisputed that the survey was never produced to defendants during the

---

**9.** The parties vigorously contest whether the methodology employed by the Admar Survey in its questioning and aggregation of certain responses can withstand scrutiny. Because this Court finds that, even accepting the Admar Survey's results on their face, Malaco's evidence of only 9.5% confusion is insufficient to tip the actual confusion factor in Malaco's favor, it declines to address the sufficiency of the survey's methodology.

course of discovery and that no objections were lodged concerning the scope of the subpoena. (Reply Declaration of Richard S. Mandel, dated Sept. 25, 2002 ("Mandel Reply Decl.") ¶ 4; Ex. WWW at Schedule A.) This Court declines to consider any survey or expert report, including the Pilot Survey, offered to defendants for the first time on a summary judgment motion and inexplicably not produced during discovery. *Horowitz v. Jacoby Moving & Storage, Inc.*, 99 Civ. 9798(AJP), 2000 WL 382063, at *4 (S.D.N.Y. Apr. 17, 2000); *Cranston Print Works Co. v. J. Mason Prods.*, 49 U.S.P.Q.2d 1661, 1665 (S.D.N.Y. 1998).

Accordingly, since it is undisputed that there is no actual confusion evidence and since Malaco's survey evidence does not establish an inference of confusion, this factor weighs in defendants' favor.

### 6. Bad Faith

In assessing bad faith, the court considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill." *Stern's Miracle–Gro Prods., Inc.*, 823 F.Supp. at 1087 (citations omitted); *accord Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir.1991). While it is undisputed that PIM's President, Michael Rosenberg, who is also Chairman of the nation's largest confectionery trade show, was aware of plaintiff's Swedish Fish candy before introducing Famous Sqwish Candy Fish, adoption of a mark with actual knowledge of another's mark is not, alone, evidence of bad faith. (Rosenberg Decl. at ¶ 8.) *See Lang*, 949 F.2d at 583–84; *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir.1978). Furthermore, Malaco's unsubstantiated allegation that Rosenberg "misrepresents how he initially became interested in marketing a red fish-shaped candy product" (Pl.'s Opp. at 14) is insufficient to create a material question of fact concerning bad faith. The deposition testimony that Malaco cites in support of its contention of bad faith "misrepresentation" actually states, in contrast to Malaco's allegation, that Rosenberg did not precisely recall the timing of the inception of his business idea. (Deposition of Michael Rosenberg, dated Feb. 6, 2002 ("Rosenberg Dep.") at 102–03.)

Finally, Malaco's contention that PIM purchased sample packages of Malaco's Swedish Fish during the packaging design process is insufficient to create a material issue of fact concerning bad faith. (Pl.'s Opp. at 21.) A PIM employee, Carol Thomas, testified at her deposition that she purchased one bag of Malaco's Swedish Fish that she came across in a convenience store, after the defendants were already comfortable with their packaging design. Indeed, it is undisputed that she never saw Malaco's packaging prior to the creation of defendants' packaging. (Deposition of Carol Thomas, dated Jan. 23, 2002 ("Thomas Dep.") at 70–75, 82–83.) Finally, Rosenberg's possession of a Malaco Swedish Fish package is also insufficient to establish bad faith. Indeed, the testimony to which Malaco cites shows that Rosenberg received the Malaco Swedish Fish sample in a registration "goodie bag" at a trade show, and that none of PIM's employees, including Rosenberg, reviewed the sample in connection with the development of defendants' packaging design. (Rosenberg Dep. at 287–90, 298–300.)

Even aggregating the alleged activities and assuming that defendants acquired Malaco's packaging for comparative purposes, Malaco still cannot establish bad faith. As Malaco's own expert acknowledged, a party contemplating a new business idea would be remiss not to research its industry competitors' packages and designs. (Deposition of Marianne R. Klim-

chuk, dated June 11, 2002 ("Klimchuk Dep.") at 32 33.) Accordingly, as there is no evidence of defendants' bad faith in adopting its mark, this factor weighs in their favor.

### 7. Sophistication of Purchasers

 It is undisputed that consumers of the parties' products are unsophisticated because the products are inexpensive and usually purchased on impulse, without careful examination. A low level of consumer sophistication contributes to an increase in the likelihood of confusion. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir.2003); *Consolidated Cigar Corp. v. Monte Cristi de Tabacos*, 58 F.Supp.2d 188, 199 (S.D.N.Y.1999). Accordingly, as there is no dispute over the low level of consumer sophistication, this factor weighs in Malaco's favor.

### 8. Quality of Goods

 This factor considers whether the senior user's reputation could be "tarnished by the inferior merchandise of the junior user." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir.1996). There is no evidence that defendants' Famous Sqwish Candy Fish are of lesser quality than Malaco's Swedish Fish. Malaco alleges that "[a]lthough the quality of [d]efendants' product has not been extensively examined, there is some evidence that [their] product does not taste as good as the SWEDISH FISH gummy candy." (Pl.'s Opp. at 15.) In support of that statement, Malaco disingenuously cites to the deposition testimony of Eric Biben. (Biben Dep. at 59.) In contrast to Malaco's assertion, Biben testified that while he personally believed Malaco's Swedish Fish tasted better, he had not received any complaints or comments from customers regarding the quality of defendants' Famous Sqwish Candy Fish. (Biben Dep. at 59.) Biben's personal opinion concerning his taste preference is insufficient to create a question of fact regarding the quality of defendants' product. Indeed, Malaco has submitted no survey, or any other information, concerning consumers' perceptions of a quality differential. Accordingly, this issue is resolved in defendants' favor. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 219 (2d Cir.2003) (finding "quality of goods" factor cannot be resolved in plaintiff's favor where there is an absence of evidence regarding quality disparity).

### 9. Aggregate Assessment

Summary judgment is granted in infringement cases where the likelihood of confusion factors weigh in the moving party's favor. *See, e.g., Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d. Cir.1986); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 CIV 10175(JSM), 2001 WL 170672, at *14 (S.D.N.Y. Feb. 21, 2001), *aff'd* 317 F.3d 209 (2d Cir.2003); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 15 F.Supp.2d 389, 400 (S.D.N.Y.1998), *aff'd*, 192 F.3d 337 (2d Cir.1999); *Consolidated Cigar Corp.*, 58 F.Supp.2d at 200. Here, the likelihood of confusion factors weigh heavily in defendants' favor. Indeed, only one of the eight likelihood of confusion factors, sophistication of purchasers, weigh in Malaco's favor. The only reasonable conclusion that may be reached from the undisputed evidence is that defendants have not infringed Malaco's Marks or packaging trade dress. *See Patsy's Brand*, 317 F.3d at 219 (affirming summary judgment where six of the eight *Polaroid* factors weighed in moving party's favor). Therefore, defendants are entitled to summary judgment on Malaco's trademark and packaging trade dress infringement claims.

Additionally, defendants are entitled to summary judgment on Malaco's New York common law unfair competition and infringement claims (Compl. at ¶¶ 96–106), since those claims are analyzed under essentially the same standards as Malaco's Lanham Act claims. To sustain a common law infringement and unfair competition claim under New York law, "the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief." *Jeffrey Milstein*, 58 F.3d at 34; *accord Kaufman & Fisher Wish Co. v. F.A.O. Schwarz*, 184 F.Supp.2d 311, 324 (S.D.N.Y.2001), *aff'd* 51 Fed.Appx. 335 (2d Cir.2002). Since Malaco cannot show actual confusion or likelihood of confusion, it consequently cannot sustain its common law trademark and packaging trade dress infringement and unfair competition claim as a matter of law.

## V. *PACKAGING TRADE DRESS DILUTION*

Defendants also move for summary judgment on Malaco's packaging trade dress dilution claim arising under N.Y. Gen. Bus. L § 360–*l* (formerly Section 368–d). (Compl. ¶¶ 67–72.) New York's anti-dilution law only protects "extremely strong marks" that have inherent or acquired distinctiveness. *BigStar Entertainment*, 105 F.Supp.2d at 218–19 (denying preliminary injunction on New York anti-dilution claim where plaintiff's mark was descriptive and weak) (citing *Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2nd Cir.1983) (same)). As noted, Malaco's packaging trade dress is weak. Indeed, Jaret acknowledged as much in a 2002 Brand Plan for Swedish Fish, prepared by its Senior Brand Manager only one day before this suit was filed. (Def.'s Ex. OO at M00492.) Specifically, the Brand Plan states that the Swedish Fish package design is "weak" and "inconsis-

tent," and has "low package recognition" and "weak trademark protection." (Def.'s Ex. OO at M00492.) Additionally, the fact that Malaco used "[m]ultiple packaging designs with different colour [sic] schemes, graphic representations, logo treatments, legal lines, type styles and tag lines" as of 1997, belies any assertion that its packaging trade dress is strong. (Def.'s Exs. CC at 0056 & E; Jaret Dep. at 34–37, 74–81; Galatolie Dep. at 148–52, 164–65, 176–83.) *See Regal Jewelry Co. v. Kingsbridge Int'l., Inc.*, 999 F.Supp. 477, 486–90 (S.D.N.Y.1998) (finding trade dress not entitled to secondary meaning where it was used inconsistently and with variation). Even today, Malaco uses two different packages for its Swedish Fish, each displaying a different background color. (Def.'s Ex. A.)

The undisputed evidence leads to the conclusion that Malaco's packaging trade dress is weak, has not acquired distinctiveness, and is therefore not entitled to protection under New York's anti-dilution statute. *See Lang*, 949 F.2d at 584 (affirming summary judgment on New York dilution claim where mark was not distinctive). Accordingly, defendants' motion for summary judgment on this claim is granted.

## VI. *FALSE ADVERTISING*

Finally, defendants argue that they are entitled to summary judgment on Malaco's claim that defendants' use of the term "Famous" on their Famous Sqwish Candy Fish packaging constitutes false advertising. (Def.'s Br. at 34–35.) To establish an actionable false advertising claim pursuant to Section 43(a) of the Lanham Act a plaintiff must show the advertisement is either (1) literally false, or (2) although literally true, "likely to deceive or confuse customers." *Lipton v. The Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995)

(citing *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991)); *accord Nat'l Basketball Assoc. v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997). Additionally, in the Second Circuit a "plaintiff must also show that the defendants 'misrepresented an inherent quality or characteristic' of the product." *Nat'l Basketball Assoc.,* 105 F.3d at 855 (quoting *Nat'l Assoc. of Pharm. Mfrs. v. Ayerst Lab.,* 850 F.2d 904, 917 (2d Cir. 1988) (internal quotation omitted)).

 It is axiomatic that "subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act" as mere "puffing." *Lipton,* 71 F.3d at 474 (statement in promotional brochures that advertiser conducted "thorough research" held to be non-actionable puffery); *accord Bose Corp. v. Linear Design Labs, Inc.,* 467 F.2d 304, 310–11 (2d Cir.1972) (defendant's claim that its "countless hours of research" led to the superior quality of its stereo speakers held to be puffing); *Cytyc Corp. v. Neuromedical Sys., Inc.,* 12 F.Supp.2d 296, 300 (S.D.N.Y.1998) (Parker, J.) (statements that product represents "the new Gold Standard" and that it depicts "cells with unprecedented clarity" held to be mere puffing); *Hilton Int'l Co. v. Hilton Hotels Corp.,* 888 F.Supp. 520, 538 (S.D.N.Y.1995) (no false advertising where advertisement claiming international hotel "was the first with standards proud enough to bear [Conrad Hilton's] name" constituted puffing). Defendants' use of the term "Famous" on its packaging (Def.'s Ex. B) is a clear example of non-actionable puffery on which no reasonable customer would rely in making his purchase.

Further, Malaco's novel argument that use of the terms "Famous" and "New" next to each other on the Famous Sqwish Candy Fish packaging creates ambiguity, is insufficient to sustain a false advertising claim. (Pl.'s Opp. at 35; Yerkes Dep. at 182–83; Def.'s Ex. B.) When an advertisement is not literally false, but rather is ambiguous or implicitly false, a plaintiff can only establish a claim of false advertising through a survey. *Johnson & Johnson * Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2d Cir.1992); *Hilton,* 888 F.Supp. at 538. Malaco fails to present this Court with any survey or other evidence showing how consumers perceive the terms "Famous" and "New" together on defendants' Famous Sqwish Candy Fish packaging. Accordingly, defendants' motion for summary judgment on Malaco's false advertising claim is granted.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. Plaintiff's complaint is dismissed with prejudice.